# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

BROADCOM CORPORATION,

      Miscellaneous Action Plaintiff,

    v.

CINGULAR WIRELESS LLC,

      Miscellaneous Action
      Defendant.

MISCELLANEOUS CASE NO. _____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON AUGUST 30, 2006

Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), Defendant Broadcom Corporation ("Broadcom") hereby moves to compel compliance with the third-party subpoena ("Subpoena") issued to Cingular Wireless LLC ("Cingular") from the United States District Court for the District of Delaware. (*See* Ex. 1, Subpoena.) The Subpoena was served on August 30, 2006, and seeks the production of specified documents and one or more designees regarding specified topics.

The only issue presented is whether, and to what extent (if at all) Cingular is entitled to an award of its outside counsel's attorney's fees – notwithstanding applicable law which dictates to the contrary. Beyond this, there are no remaining issues with respect to the scope of the subpoena. Documents have been gathered, and Broadcom seeks an order compelling immediate document production and depositions -- as Cingular has refused to produce the already located, responsive

documents (in an apparent effort to leverage the monetary issue in the face of Broadcom's upcoming trial and other litigation deadlines).[1]

Broadcom's motion should be granted because:

- There are no issues as to burden and scope[2];

- Cingular is not entitled to an award of its attorneys' fees under applicable law;

- The law does not permit Cingular to hold the (already identified and collected) documents and discovery "hostage" pending resolution of its monetary demands;

- Early in the matter, Broadcom offered to compensate Cingular for its first $10,000 of out-of-pocket costs, and asked for an estimate of the costs Cingular would incur in responding to the Subpoena. Weeks later, after Cingular had already searched for and gathered the responsive documents and incurred over $40,000 in attorney's fees, Cingular finally provided an "estimate" of over $80,000 in fees;

- Notably, despite having no obligation to do so (but in an effort to resolve the dispute), Broadcom has offered to pay Cingular the first $20,000 in out-of-pocket costs (of an $80,000+ demand) incurred by Cingular in responding to the Subpoena (in addition to cost of the products, for which Broadcom has already made payment). Broadcom is perplexed and concerned with the volume of asserted, responsive documents--and is calling into question the reasonableness of Cingular's monetary claim;

- Broadcom has been diligent. Cingular has not moved to quash the subpoena. At Cingular's request, Broadcom has granted Cingular several extensions to respond to the Subpoena, only to be met with still further demands that Broadcom pay Cingular's attorney's fees.

In sum, Cingular's demands reflect what may be viewed as an apparent attempt to leverage otherwise unrecoverable attorney's fees—at the eleventh hour of this case. Broadcom respectfully

---

[1]     Cingular has designated two knowledgeable witnesses and, subject has otherwise agreed to produce them for deposition on the on dates certain.

[2]     Broadcom has taken reasonable steps to avoid imposing any undue burden on Cingular, resolving all issues pertaining to burden and scope.

1 submits that the Court should order Cingular to produce documents and witnesses responsive to the

2 Subpoena on or before **December 22, and December 29, 2006**, respectively (or other dates agreed to

3 by counsel for the parties that are prior to the December 31, 2006 cut-off for this third-party

4 discovery). Broadcom respectfully requests a hearing to resolve this Motion.

5 **I.     BACKGROUND**

6        This motion seeks enforcement of a subpoena for document production and deposition

7 testimony relevant to Civil Action No. 05-cv-1392 B (BLM), currently pending in the Southern

8 District of California between Qualcomm Incorporated and Broadcom Corporation *("Qualcomm v*

9 *Broadcom")*. In *Qualcomm v. Broadcom*, Broadcom asserts (by way of counterclaims) that

10 Qualcomm is infringing five patents relating to cellular communications technology. Qualcomm

11 designs and sells semiconductor chips and associated software to third party cellular phone

12 manufacturers. Certain of Broadcom's patent claims involve use of the accused chips and software in

13 cell phones or other devices, including use on a cellular network. In the *Qualcomm v. Broadcom*

14 litigation, Qualcomm has to date resisted discovery showing that the accused chips (and associated

15 software) are used in specific devices and networks, that the accused chips operate as intended in the

16 finished cellular products, and that Qualcomm aids, abets, and induces that "downstream" use.

17        In light of Qualcomm's resistance, Broadcom served subpoenas on several of Qualcomm's

18 customers, seeking the information that Qualcomm refused to provide. The instant motion seeks

19 enforcement of one of those subpoenas. Broadcom submits that the information sought can be

20 obtained by a streamlined production of documents, and a deposition of a Cingular's designees to

21 follow. This will minimize any inconvenience to all involved. Despite Broadcom's good faith

22 efforts to obtain the requested information in response to its subpoena, and Cingular's actual

23 collection of the responsive documents, Cingular has failed to produce nearly all responsive

24 information. The only "things" Cingular has produced were certain products that Broadcom

25 requested, for which Cingular demanded pre-payment. Cingular has agreed to produce the

26 responsive information and two specific, knowledgeable deponents in response to the subpoena.

27 Broadcom has agreed to compensate Cingular for all of its actual copying and document conversion

28 costs, and has also offered to pay approximately the first $20,000 in all other expenses that Cingular

has incurred. But Cingular refuses to produce the documents it has already collected unless and until Broadcom agrees to reimburse Cingular for an unreasonable sum of attorney's fees from an outside law firm that Cingular has incurred.

## II.    BROADCOM PROPERLY SERVED A SUBPOENA ON AUGUST 30, 2006

The subpoena served on Cingular was issued from the District of Delaware, where Cingular is incorporated. (Ex. 1, Subpoena); Fed. R. Civ. P. 45. The Subpoena requested the production of documents on September 18, and requested a deposition on September 19. (Ex. 1 at 1.) The Subpoena seeks production of a reasonable scope of documents and things necessary for the development of Broadcom's case against Qualcomm.

## III.   BROADCOM MET AND CONFERRED WITH CINGULAR IN GOOD FAITH TO AVOID IMPOSING AN UNDUE BURDEN ON CINGULAR

Broadcom has taken, and continues to take, reasonable steps to avoid imposing an undue burden on Cingular. First, Broadcom drafted the subpoena to seek only documents "sufficient to identify" or "sufficient to show" particular information. (See Ex. 1, Schedule B at Request Nos. 1, 3, 4, 5, 6, 10.) In response to at least some of these requests, Cingular could produce, for example, summary-level documents to meet certain categories of information requested. Second, through a series of conferences, Broadcom has narrowed its subpoena. (See, e.g., Ex. 3 at 1-4, 10/2/06 e-mail from Powers to Bianco.) As one example, Cingular has explained that it sells eighteen products that contain the accused Qualcomm products and fall within the scope of the subpoena. To alleviate any burden on Cingular, Broadcom agreed to accept documents regarding representative products (reducing the number of products for which Cingular would produce responsive information from eighteen to approximately five). Broadcom also agreed to pay reasonable out of pocket costs such as the costs of reproducing and shipping documents and the costs of clerical time associated with collecting documents.

But Cingular demanded that Broadcom agree to provide a "blank check" for Cingular's costs and fees in responding to the Subpoena. In particular, Cingular sought, in advance of a search for

documents or estimate as to the cost, all reasonable costs and attorney's fees incurred by Cingular in responding to the Subpoena.

Broadcom explained that it did not believe that costs for employee time and attorney's fees incurred in responding to a subpoena are reimbursable under Rule 45. Before Cingular began collecting responsive documents, Broadcom therefore requested, and Cingular promised to provide, an "estimate" of its costs to respond to the Subpoena. (Ex. 3 at 16.) In the absence of further information, Broadcom offered to pay for copying costs and "for the reasonable, itemized time of hourly clerical workers employed by Cingular" in making Cingular's production available to Broadcom, up to a reasonable, $10,000 ceiling. (Ex. 3 at 13.) Unfortunately, it took Cingular over one month to provide any estimate or quantification of the costs that Cingular had incurred, and the costs it expected to incur.[3]

Broadcom requested an estimate in the first instance to determine whether Cingular was seeking significant compensation for items that are not typically reimbursable or excessive under the circumstances, or was directing effort at a category of documents that Broadcom could further narrow. By the time Cingular provided its "estimate," Cingular had already collected all of the data it expected to review, and claimed to have already incurred over $40,000 in attorney's fees, an estimated one-half of the fees for which it then stated Cingular would seek compensation. (*See* McBride Decl. ¶¶ 4-5.) In other words, Cingular's "estimate" could not serve the purpose of

---

[3]    Oddly, Cingular did not "estimate" the costs that Cingular previously was most concerned about and promised to estimate (*i.e.*, the alleged cost of employee time spent responding to the subpoena), but instead identified only attorney's fees. (*See* Ex. 3 at 9, 10/10/06 e-mail from Powers to Bianco ("Cingular is legally entitled to reimbursement of its costs for employee time spent in responding to the subpoena . . . .").) Broadcom had previously offered to "reimburse Cingular for the reasonable, itemized time of hourly clerical workers employed by Cingular in making Cingular's production . . . ," but explained that "extraordinary expenses such as professional fees or time spent on this matter by salaried employees . . . are [not] normally reimbursable." (Ex. 3 at 13, 10/10/06 e-mail from Bianco to Powers.) Based on Cingular's present focus *solely* on attorney's fees, (1) Cingular apparently is not seeking compensation for any itemized time of hourly clerical workers, and (2) Cingular apparently agrees with Broadcom that time spent by salaried employees is either not recoverable or was *de minimis*.

permitting Broadcom to work with Cingular to reduce the expense, if necessary, of compliance with the Subpoena. Moreover, Cingular did not alleviate Broadcom's concern in any way, but instead warned that the total amount of attorney's fees was "increasing daily," and it refused to produce Cingular's documents until Broadcom agreed to pay for Cingular's attorney's fees. (Ex. 3 at 28.)

## IV.    THE ONLY DISPUTE IS WHO SHOULD PAY FOR THE ATTORNEY'S FEES THAT CINGULAR CLAIMS IT INCURRED IN ITS SEARCH FOR DOCUMENTS RESPONSIVE TO THE SUBPOENA

Although Cingular originally objected to the subpoena, it now agrees to produce responsive documents and things, in light of conferences in which Broadcom has narrowed the scope of the subpoena. Cingular does not dispute the relevance of the responsive documents and things, and does not object to the subpoena as overly broad or unduly burdensome. The only dispute is whether, and how much, Broadcom will be required to compensate Cingular for outside attorney's fees incurred by Cingular in responding to the subpoena.

## V.    BROADCOM SHOULD NOT BE REQUIRED TO PAY THE FEES OF CINGULAR'S OUTSIDE COUNSEL IN RESPONDING TO THE SUBPOENA

### A.    A Sanction Of Attorney's Fees Is Not Appropriate Here

Rule 45(c)(1) provides for the recovery of a "reasonable attorney's fee" *only as a sanction* if the issuing party fails to take reasonable steps to avoid imposing an undue burden no the subpoenaed party. *See* Fed. R. Civ. P. 45(c)(1). Case law and the applicable local rules affirm this straightforward interpretation. *Builders Assoc. of Greater Chicago v. Chicago*, No. 96 C 1122, 2002 U.S. Dist. LEXIS 8461, at **11-13, 18 (N.D. Ill. May 13, 2002) (explaining that an award of attorney's fees under Rule 45(c) is a sanction); *see* D. Del. Local Rule 1.3(a) (permitting an award of attorney's fees only as a sanction upon the "failure to conform" with, *inter alia*, the Federal Rules of Civil Procedure (absent another applicable statute or regulation)). Broadcom has taken, and continues to take, reasonable steps to avoid imposing an undue burden on Cingular. (*See supra* § III.) Shifting the fees of Cingular's outside lawyers to Broadcom goes beyond Broadcom's obligations to avoid an undue burden. Outside counsel costs are controlled by Cingular, and to a large extent are discretionary with Cingular.

**B.    A Compensatory Award Of Attorney's Fees Is Not Appropriate Here**

Many courts that have interpreted the compensatory, or non-sanctions provisions, of Rule 45 have refused to award attorney's fees, or awarded only a portion of the fees requested. *See* Fed. R. Civ. P. 45(c)(2)(B) (orders to compel production, entered upon motions to compel, shall protect non-parties from "significant expense" resulting from the inspection and copying commanded); *United States v. CBS, Inc.*, 103 F.R.D. 365, 374-75 (C.D. Cal. 1984) (denying third parties' request for attorney's fees that were necessarily incurred, *inter alia*, to permit its attorney to review documents for privilege and confidentiality); *In re First Am. Corp.*, 184 F.R.D. 234, 238, 244-45 (S.D.N.Y. 1998) (awarding one-third of the third-party's solicitors' and legal fees pursuant to the "significant expense" provision of Rule 45(c)(2)(B)); *Pac. Gas & Elec. Co. v. Lynch*, No. C-01-3023, 2002 WL 32812098, at **3-4 (N.D. Cal. Aug. 19, 2002) (awarding the first $20,000 in costs, including copying, shipping and labor costs and legal fees incurred by the third-party, pursuant to Rule 45(c)(2)(B)). Courts have completely denied compensation for legal fees based on the "American Rule" of litigation in U.S. courts, by which parties bear their own legal fees. *CBS*, 103 F.R.D. 365, 374-75. In other words, even where a court orders compensation (including attorney's fees), courts recognize that the requesting party need only pay "some portion of costs of production" incurred by the producing party. *See Pac. Gas & Elec. Co.*, 2002 WL 32812098, at *3.

The factors that determine what "portion" the requesting party should pay show that the attorney's fees Cingular seeks are not reimbursable. Legal fees of outside counsel are not reimbursable under the following circumstances:

- where the third-party has not made a "factual showing of the reason the work could not [have been] done by a staff attorney," rather than outside counsel;

- where the work that was done was "unnecessary or . . . could have been done less expensively";

- whether compensation is claimed for "clerical or other non-legal work done by an attorney";

- where the retrieval and evaluation of documents was not "done by the lowest-level person consistent with accurate and reliable identification of the material called for

and well-reasoned judgments concerning whether claims of privilege should be asserted";

- where the fees are otherwise not reasonable;

- where the third-party has not actually been billed for, or paid, the amount sought in reimbursement;

- where the requesting party is not the sole beneficiary of the attorney's work.

*Kahn v. GM*, No. 88 Civ. 2982, 1992 WL 208286, at **1-3 (S.D.N.Y. Aug. 14, 2992); *CBS*, 103 F.R.D. at 374-75 (denying third parties' request for necessary attorney's fees).

Here, Cingular seeks reimbursement of its outside attorney's fees associated with the following tasks: (1) "conducting internal investigations," (2) "meet and confer conferences with Broadcom['s] counsel, correspondence and documentation of same," (3) "communications and updates with Cingular's in-house counsel," and (4) "document review." (Ex. 3 at 28-29, 11/21/06 ltr. from Powers to McBride.)

The above factors weigh in favor of disallowing, or significantly reducing, the fees requested by Cingular. As a threshold matter, Cingular has not shown that Cingular's in-house counsel was incapable of performing the work performed by outside counsel. Cingular has had over three months to search for and produce documents responsive to the Subpoena. Had Cingular's in-house counsel performed all or some of that work, the cost would have been part of Cingular's overhead costs, and outside counsel fees could have been drastically reduced, including the fees related to outside counsel's "communications and updates with Cingular's in-house counsel."

Further, it appears that Cingular has not incurred its outside counsel fees reasonably. For example, it does not appear that Cingular has used the lowest-level persons or attorneys possible for its investigation. As of November 21, the average billing rate of the outside attorney's who performed work on this matter for Cingular was $310. As of today, the average billing rate of the attorneys who performed work on this matter still exceeds $250. (*See* Ex. 3 at 32-33.) Further, Cingular's scarce use of paralegals is unreasonable. In a November 22 teleconference, counsel for

Cingular explained that Cingular knew, in advance of the document review, that the overwhelming majority of documents do not, and could not, contain privileged information. (*See* McBride Decl. ¶ 6.) Furthermore, the Protective Order has a provision that allows for any party, including non-parties, to demand return of a privileged document without any concerns regarding a waiver – and Broadcom would have gladly provided reassurances in that regard. In such circumstances, Cingular should have utilized more paralegal time, and less time of attorneys billing at nearly $300/hour. Instead, attorney time has outpaced paralegal time by a ratio greater than 4:1. (*See* Ex. 3 at 33.)

Moreover, much of Cingular's outside counsel fees includes "meet and confer conferences with Broadcom counsel [and] correspondence and documentation of same." (Ex. 3 at 33.) Cingular has engaged in its meet and confers and correspondence in an inefficient and unreasonable manner. By way of example only, counsel for Broadcom repeatedly made simple, specific requests telephonically or in voice mail messages left for Cingular's counsel. In response, rather than simply returning a phone call, Cingular sent multiple letters several hours later (sometimes several days later). Moreover, even Cingular recognizes that some of Cingular's work primarily benefits Cingular, not Broadcom, (*e.g.*, preparing objections to the subpoena) and therefore must be excluded from the compensation sought by Cingular. (*See* Ex. 3 at 28 (alleging that certain fees were excluded from Cingular's demand).) The vast majority of time spent preparing correspondence to, and demanding money from, Broadcom falls into this same category, and should also be excluded.[4]

---

[4]    In a December 7 teleconference, Cingular's outside counsel explained that it prepared most or all of its written correspondence because its client, Cingular, is more comfortable with and prefers that its outside counsel memorialize discussions with other lawyers. (*See* McBride Decl. ¶ 7.) Such correspondence benefits Cingular, not Broadcom, and Cingular should bear the fees associated therewith.

C.    **Cingular Is Capable Of Paying Its Own Attorney's Fees, And Has Substantial Reason To Do So**

Cingular's website claims that its current annual revenue is 34 billion dollars. Broadcom's current annual revenue is less than 8% of that amount. Cingular is plainly capable of bearing the costs associated with the subpoena. Most or all of the categories in the subpoena were carefully drafted to seek only documents "sufficient to identify" or "sufficient to show" particular information. In response to at least some of these requests, Cingular could produce, for example, summary-level documents to meet certain categories of information requested. For example, as part of Cingular's response to Document Request No. 1, Cingular could presumably locate summary-level documents that identify each Cingular Device that incorporates a Qualcomm Accused Product. Moreover, Broadcom further explained and/or narrowed certain requests, as reflected in communications from Broadcom. Broadcom is therefore concerned that the anticipated voluminous production may be the result of insufficient searches performed by Cingular. In any event, Cingular's continued sale of eighteen of its products is at issue the underlying litigation. Cingular's interest in that litigation weighs in favor of requiring Cingular to bear its own attorney's fees.

Thus, the Court should reject Cingular's demand for Broadcom to pay Cingular's attorney's fees. Alternatively, the Court should require Broadcom to pay only a portion of Cingular's expenses, including attorney's fees—*i.e.*, the first $20,000 thereof, which Broadcom previously offered to pay to resolve the dispute. Broadcom's offer finds ample support in the case law. *See, e.g., Pac. Gas & Elec.*, 2002 WL 32812098, at **3-4 (awarding the first $20,000 in costs, including copying, shipping and labor costs and legal fees incurred by the third-party, pursuant to Rule 45(c)(2)(B)); *In re First Am. Corp.*, 184 F.R.D. at 238, 244-45 (awarding one-third of the third-party's solicitors' and legal fees pursuant to the "significant expense" provision of Rule 45(c)(2)(B)).

VI.    **BROADCOM'S NEED FOR THE REQUESTED INFORMATION JUSTIFIES ANY ALLEGED BURDEN ON CINGULAR**

Broadcom narrowly tailored its requests to seek information that is relevant and necessary to prepare its case. Where the main action is a patent infringement action, a determination of relevance

1    implicates "the substantive law of patent validity and infringement." *Truswal Sys. Corp. v. Hydro-*

2    *Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987). Federal Circuit law is therefore used to assess

3    relevance. *Id.* During discovery, relevance must be interpreted more broadly than at trial. *Id.* at

4    1211. The Federal Circuit has explicitly warned that district courts supervising discovery ancillary to

5    an action in another district should be "especially hesitant to pass judgment on what constitutes

6    relevant evidence thereunder." *Id.* at 1212.

7         The subpoenaed information is relevant. The Subpoena seeks information relating to the

8    design and use of the Qualcomm chips that Qualcomm sold (and/or is selling) to Cingular, and the

9    cellular telephones into which those chips were incorporated, and Qualcomm's efforts to place

10   products containing those chips with Cingular. This information relates to the structure and function

11   of the accused infringing products. The characteristics of the chips that Qualcomm sells to Cingular

12   are relevant and necessary to allow Broadcom to prove what its previous investigations have shown --

13   that the accused products do, in fact, infringe. *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785

14   F.2d 1017, 1024-25 (Fed. Cir. 1983) (allowing discovery of third-party information because "no other

15   purchaser of [the infringing product] appears to have participated in the production of the [infringing

16   products] as [the third party] did."); *Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d

17   323, 326 (10th Cir. 1981) (requiring third party to disclose software used in accused infringing device

18   to allow patent owner to prove infringement); *Pfizer, Inc. v. Mylan Lab., Inc.*, No. 02 CV 1628 (RJC),

19   M8-85 (JFK), 2003 U.S. Dist. LEXIS 24806, at *6 (S.D.N.Y. Dec. 17, 2003) (third party required to

20   disclose supplies sold to accused infringer; amount and kind of supplies sold were relevant to issue of

21   infringement).

22        While Qualcomm designed the accused infringing chips, Qualcomm now refuses to admit that

23   its chips operate as intended in the finished cell phone products. Instead, Qualcomm claims that only

24   its customers can provide that information. That is exactly the information sought by Broadcom's

25   subpoena. Accordingly, Broadcom's need for the subpoenaed information is substantial.

26   **VII.    CONCLUSION**

27        While Broadcom has done everything possible to alleviate any burden on Cingular, Cingular

28   holds hostage the documents it has already collected. Accordingly, Broadcom respectfully requests

-11-

1  that the Court order Cingular to respond to Broadcom's subpoena by producing all responsive

2  documents on or before **December 22, 2006**, and knowledgeable witnesses on or before **December**

3  **29, 2006** (or other dates agreed to by counsel for the parties that are prior to the December 31, 2006

4  cut-off for this third-party discovery), at locations and times to be agreed upon by counsel for

5  Broadcom and Cingular.  The Court should not shift any of Cingular's attorney's fees to Broadcom

6  or, in the alternative, may require Broadcom to pay the first $20,000 of Cingular's demonstrated out

7  of pocket expenses, including attorney's fees.  A proposed order is attached.  Broadcom respectfully

8  requests a hearing to resolve this Motion.

9

10                                    Respectfully Submitted,

11

12  By: _Brian E. Farnan_ (Bar No. 4089)
    Brian E. Farnan (Bar No. 4089)

13  PHILLIPS GOLDMAN & SPENCE, P.A.
    1200 N. Broom Street

14  Wilmington, DE 19806
    (302) 655-4200

15  (302) 655-4210 (fax)
    bef@pgslaw.com

16

17  OF COUNSEL:
    McANDREWS, HELD & MALLOY, LTD.

18  JEAN DUDEK KUELPER
    THOMAS J. WIMBISCUS

19  GREGORY C. SCHODDE
    500 West Madison Street, 34th Floor

20  Chicago, Illinois 60661
    Telephone:    (312) 775-8000

21  Facsimile:    (312) 775-8100

22

23

24

25

26

27

28

1  BRIAN FARNAN
   PHILLIPS, GOLDMAN & SPENCE, P.A.
2  1200 North Broom Street
   Wilmington, DE 19806
3  Telephone:   (302) 655-4200

4  JEAN DUDEK KUELPER (admitted *pro hac vice*)
   THOMAS J. WIMBISCUS (admitted *pro hac vice*)
5  GREGORY C. SCHODDE (admitted *pro hac vice*)
   MCANDREWS, HELD & MALLOY, LTD.
6  500 West Madison Street, 34th Floor
   Chicago, Illinois 60661
7  Telephone:   (312) 775-8000
   Facsimile:   (312) 775-8100

8
   Attorneys for Defendant/Counterclaimant
9  BROADCOM CORPORATION

10

11                  UNITED STATES DISTRICT COURT
12                      DISTRICT OF DELAWARE

13

14  BROADCOM CORPORATION,                    MISCELLANEOUS CASE NO. _____

15                Miscellaneous Action Plaintiff,

16                                           DECLARATION OF SCOTT P. McBRIDE
                                             IN SUPPORT OF MEMORANDUM OF
17         v.                                POINTS AND AUTHORITIES IN
                                             SUPPORT OF MOTION TO COMPEL
18                                           COMPLIANCE WITH SUBPOENA
    CINGULAR WIRELESS LLC,                   SERVED ON AUGUST 30, 2006
19

20                Miscellaneous Action       HEARING REQUESTED
                  Defendant.
21                                           Judge: _____

22

23

24

25

26

27

28

1    I, Scott P. McBride, declare as follows:

2        I am a partner at the law firm of McAndrews, Held and Malloy, co-counsel for Broadcom

3    Corporation ("Broadcom") in the above-entitled action. I am licensed to practice law in Illinois.

4    I am familiar with the facts set forth herein, and if called as a witness, I could and would testify

5    competently to those facts under oath. In support of Broadcom's Motion to Compel Compliance

6    with Subpoena Served on August 30, 2006, I state as follows:

7        1.    Attached hereto as Exhibit 1 is a true and correct copy of Broadcom's subpoena

8    issued by the District of Delaware to Cingular Wireless LLC (the "Subpoena").

9        2.    Attached hereto as Exhibit 2 is a true and correct copy of Cingular Wireless LLC's

10    Response and Objections to Defendant Broadcom Corporation's Deposition Subpoena for

11    Production of Business Records and Testimony.

12        3.    Attached hereto as Exhibit 3 are true and correct copies of correspondence

13    between counsel for Broadcom and counsel for Cingular, with pertinent portions highlighted.

14        4.    Broadcom requested an estimate of Cingular's anticipated expenses associated

15    with the Subpoena in the first instance to determine whether Cingular was seeking significant

16    compensation for items that are not typically reimbursable or excessive under the circumstances,

17    or was directing effort at a category of documents that Broadcom could further narrow.

18        5.    By the time Cingular provided its "estimate," counsel for Cingular, Michele

19    Powers, told me in a November 22, 2006, telephone conference had already collected all of the

20    data it expected to review, and claimed to have already incurred over $40,000 in attorney's fees,

21    an estimated one-half of the fees for which it then stated Cingular would seek compensation.

22        6.    In that same November 22 teleconference, counsel for Cingular, Ms. Powers,

23    explained that Cingular knew, in advance of the document review, that the overwhelming

24    majority of documents do not, and could not, contain privileged information.

25        7.    In a December 7 teleconference with Cingular's counsel, Cingular's outside

26    counsel, Ms. Powers, explained that it prepared most or all of its written correspondence because

27

28
                                    - 1 -

1    its client, Cingular, is more comfortable with and prefers that its outside counsel memorialize

2    discussions with other lawyers.

3        I declare under penalty of perjury that the foregoing is true and correct.

4

5    Executed on December 8, 2006 in Chicago, Illinois.

6

7    _____

8    Scott P. McBride

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# EXHIBIT 1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

### District of Delaware

SUBPOENA IN A CIVIL CASE

Qualcomm Inc.

v.

Broadcom Corp.

CASE NUMBER 05 CV 1392
United States District Court for the
Southern District of California

TO:        Cingular Wireless LLC
           in care of:
           Corporation Service Company
           2711 Centerville Road
           Suite 400
           Wilmington DE 19808

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.
See Attached Schedule A

| PLACE OF DEPOSITION<br>Sheraton Suites Wilmington<br>422 Delaware Ave<br>Wilmington DE 19801 | DATE AND TIME<br>September 19, 2006 at 9 a.m. EST |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   See Attached Schedule B

| PLACE<br>Sheraton Suites Wilmington<br>422 Delaware Ave<br>Wilmington DE 19801 | DATE AND TIME<br>September 18, 2006 at 9 a.m. EST |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated. the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| *[signature]*<br>Issuing Officer's Name, Address, and Phone Number | 8-28-2006 |

Gregory C. Schodde (Attorney for the Plaintiff, Broadcom Corporation)
McAndrews, Held & Malloy, Ltd., 500 W. Madison, Suite 3400, Chicago, Illinois  60661  (312) 775-8000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

EXHIBIT 1
PAGE 1 OF 10

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED     8/30/06 at 1:47 PM | | Corporation Service Company<br>2711 Centerville Rd. #400<br>Wilmington, DE  19808 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Cingular Wireless LLC | Accepted by Mary Drummond, Managing Agent duly authorized |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Daniel Newcomb | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on     8/30/06
                DATE

SIGNATURE OF SERVER
DELAWARE ATTORNEY SERVICES
2000 Pennsylvania Avenue, Suite 207

ADDRESS OF SERVER
Wilmington, DE  19806   (302) 429-0657

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT 1
PAGE 2 OF 10

## SCHEDULE A

**DEFINITIONS:**

The following definitions apply to the requests for documents and to the deposition topics set forth below and to the instructions provided heretofore.

1. "Communication" means any transmission of information by any means, including without limitation telephone conversations, letters, telegrams, teletypes, telexes, telecopies, facsimiles, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

2. "Concern" or "concerning" means relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as the context makes appropriate.

3. "Document" and/or "thing" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and 26(b).

4. "Broadcom" means Broadcom Corporation and/or all its past or present predecessors, successors, partners, investors, corporate parents, affiliated companies or corporations, divisions, departments, direct or indirect subsidiaries, officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its or their behalf.

5. "Qualcomm" means Qualcomm Incorporated and/or all its past or present predecessors, successors, partners, investors, corporate parents, affiliated companies or corporations, divisions, departments, direct or indirect subsidiaries, officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its or their behalf.

EXHIBIT 1
PAGE 3 OF 10

1
2
3
4
5
6

6. "Cingular" means Cingular Wireless and/or all its past or present predecessors, successors, partners, investors, corporate parents, affiliated companies or corporations, divisions, departments, direct or indirect subsidiaries, officers, directors, employees, principals, agents, attorneys, servants, representatives, and all other persons acting, or purporting to act, on its or their behalf.

7
8
9
10
11
12
13
14
15
16
17

7. "Qualcomm Mobile Station Processor" means any chip or chipset ever referred to by Qualcomm by a designation beginning with MSM1, MSM2, MSM3, MSM5, MSM6, QSC6, or MSM7 such as MSM1.0 (1st Generation MSM), MSM2.0 (2nd Generation MSM), MSM2.2 (3rd Generation MSM), MSM2300 (4th Generation MSM), MSM3000 (5th Generation MSM), MSM3100 (6th Generation MSM), MSM5000 (7th Generation MSM), MSM5100, MSM5200, MSM5500, MSM6000, QSC6010, QSC6020, MSM6025, QSC6030, MSM6050, MSM6100, MSM6150, MSM6200, MSM6250, MSM6255, MSM6255A, MSM6260, MSM6275, MSM6280, MSM6300, MSM6500, MSM6550, MSM6800, MSM7200, MSM7500, and MSM7600, any successor to any such chip or chipset, and any portions of the foregoing.

18
19
20
21
22

8. "Qualcomm Base Station Processor" means any chip or chipset ever referred to by Qualcomm by a designation beginning with CSM1, CSM2, CSM5, or CSM6 such as CSM1.0, CSM1.5, CSM2000, CSM5000, CSM5500, CSM6700, and CSM6800, any successor to any such chip or chipset, and any portions of the foregoing.

23
24
25
26
27

9. "Qualcomm Radio Processor" means any chip or chipset ever referred to by Qualcomm by a designation beginning with RFL, RFT, RFR or RTR such as RFR5200, RTR5200, RFR6000, RFL6000, RFT6100, RFL6200, RFR6200, RTR6200, RFR6250, RTR6250, RFR6275, and RTR6275, any successor to any such chip or chipset, and any portions of the foregoing.

28

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

05 CV 1392                     - 2 -                  Schedules A and B to Broadcom's Subpoena to Cingular Wireless

EXHIBIT 1
PAGE 4 OF 10

1

2    10. "Qualcomm Power Management Chip" means any chip or chipset ever

3    referred to by Qualcomm by a designation beginning with PM such as PM1000,

4    PM6000, PM6050, PM6610, PM6620, PM6630, PM6640, and PM6650, any

5    successor to any such chip or chipset, and any portions of the foregoing.

6    11. "Qualcomm Reference Design" means any thing provided for test and/or

7    development purposes or test mobile, such as reference boards or other products

8    such as the TM6275 (and any successor thereto and any portions thereof),

9    developed, used, sold, distributed, transferred, or otherwise disposed of by

10   Qualcomm that comprises a Qualcomm Mobile Station Processor. "Qualcomm

11   Reference Design" shall include without limitation any product provided for test

12   and/or development purposes or test mobile that comprises a Qualcomm Mobile

13   Station Processor and falls within the meaning that Qualcomm ascribed to the term

14   "reference designs" in its 2004 10-K report, filed with the Securities and Exchange

15   Commission, in which Qualcomm stated the following:  "In addition to the key

16   components in a wireless system, QCT provides our customers with system

17   reference designs and development tools to assist in customizing features and user

18   interfaces, to integrate our products with components developed by others, and to

19   test interoperability with existing and planned networks."

20   12. "Qualcomm Accused Product" means Qualcomm Mobile Station

21   Processors, Qualcomm Base Station Processors, Qualcomm Radio Processors,

22   Qualcomm Power Management Chips, and Qualcomm Reference Designs.

23   13. As used herein, "including" means including without limitation.

24

25

26

27

28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1392                         - 3 -                  Schedules A and B to Broadcom's Subpoena to Cingular Wireless

EXHIBIT 1
PAGE 5 OF 10

**DEPOSITION TOPICS:**

1.    The identity (including by manufacturer, model number, and incorporated Qualcomm Accused Product) and number of things made, sold and/or placed in service in the U.S. that: (a) incorporate a Qualcomm Accused Product; and (b) are or were provided for use in connection with any wireless service provided by or for Cingular in the United States.

2.    The instructions and/or recommendations provided by or on behalf of Qualcomm with respect to setup (including default or other settings), configuration, installation, service, repair, or other technical support for each Qualcomm Accused Product, including with respect to enabling the cell search procedure of Annex C of 3GPP TS 25.214.

3.    The use of any Qualcomm Accused Product, in any thing, including by Cingular and/or its subscribers, in the United States, to implement a mobile originated channel access procedure for the purpose of transferring packets, and the associated transmission of packets, in the direction from the mobile station to the network, including but not limited to using an Uplink State Flag to control access to network services, including but not limited to using an Uplink State Flag to control access to the Random Access Channel and/or Packet Random Access Channel.

4.    The results of certification testing with respect to the cell search procedure of Annex C of 3GPP TS 25.214, for each type of WCDMA/UMTS enabled thing that incorporates a Qualcomm Accused Product and used by Cingular and/or its subscribers with a Cingular (owned or sponsored) wireless network in the United States.

5.    The nature and extent of the support and services provided by Qualcomm to Cingular, including the value of the services, the types of services provided, the number of Qualcomm employees assigned to support Cingular, and

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1392                        - 4 -

Schedules A and B to Broadcom's Subpoena to Cingular Wireless

EXHIBIT 1
PAGE 6 OF 10

the documents and things that best show the nature and extent of support services provided by Qualcomm to Cingular.

6. The search for documents by Cingular in order to respond to this subpoena.

7. The authenticity, business record nature, and substantive content of the documents and objects described in, requested by, or produced pursuant to Schedule B.

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1392                    - 5 -          Schedules A and B to Broadcom's Subpoena to Cingular Wireless

EXHIBIT 1
PAGE 7 OF 10

**SCHEDULE B**

**REQUESTS FOR DOCUMENTS AND THINGS:**

1.   Documents sufficient to identify each thing (including by manufacturer, model number, and incorporated Qualcomm Accused Product) and the number of such things made, sold and/or placed in service in the U.S. that: (a) incorporate a Qualcomm Accused Product; and (b) are or were offered for sale by or for Cingular for use on any Cingular wireless network in the United States (hereafter "Cingular Devices").

2.   Two representative physical samples of each Cingular Device responsive to Document Request no. 1, above, one of which may be disassembled for photographing.

3.   Documents sufficient to identify the use of any Qualcomm Accused Product, in any Cingular Device, in connection with any wireless network provided by or for Cingular in the United States, to implement a mobile originated channel access procedure for the purpose of transferring packets, and the associated transmission of packets, in the direction from the mobile station to the network, including but not limited to using an Uplink State Flag to control access to network services, including but not limited to using an Uplink State Flag to control access to the Random Access Channel and/or Packet Random Access Channel. See, e.g. 3GPP TS 04.60 version 8.27.0 Release 1999 §§ 3.1, 5.2.3, 7.1, 10.4.1; 3GPP TS 45.002 version 6.12.0 Release 6 §§ 3.3.3.2.1, 6.3.2.1, 6.3.2.2.1, 6.3.2.2.3; 3GPP TS 43.064 version 6.10.0 Release 6 §§ 5.2.1, 6.6.4.

4.   Documents sufficient to show Cingular's certification testing requirements and procedures for WCDMA/UMTS enabled devices.

5.   Documents sufficient to show that the Cingular Device(s) satisfy certification or other testing for compliance with the cell search procedure in Annex

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

05 CV 1392                          - 6 -

Schedules A and B to Broadcom's Subpoena to Cingular Wireless

**EXHIBIT 1
PAGE 8 OF 10**

C of 3GPP TS 25.214, including in connection with the use of any Cingular Device in a Cingular network in the United States.

6. Documents sufficient to show that Cingular Device(s) was (were) determined to satisfy certification or other testing for implement a mobile originated channel access procedure for the purpose of transferring packets, and the associated transmission of packets, in the direction from the mobile station to the network, including but not limited to using an Uplink State Flag to control access to network services, including but not limited to using an Uplink State Flag to control access to the Random Access Channel and/or Packet Random Access Channel. See, e.g. 3GPP TS 04.60 version 8.27.0 Release 1999 §§ 3.1, 5.2.3, 7.1, 10.4.1; 3GPP TS 45.002 version 6.12.0 Release 6 §§ 3.3.3.2.1, 6.3.2.1, 6.3.2.2.1, 6.3.2.2.3; 3GPP TS 43.064 version 6.10.0 Release 6 §§ 5.2.1, 6.6.4.

7. One copy of each agreement between Cingular and Qualcomm concerning the provision of any services or assistance by or on behalf of Qualcomm to Cingular (including technical support), concerning any Qualcomm Accused Product, in the United States.

8. One screen shot of each web based internet or intranet page that Qualcomm makes available to Cingular, whether by remote login or other means, that concerns support, configuration, repair, or other services provided by Qualcomm to Cingular.

9. A copy of each communication between Qualcomm and Cingular that relates to any patent suit between Qualcomm and Broadcom or this subpoena.

10. Documents sufficient to show Qualcomm's recommendations for each configurable parameter of the Cingular Devices.

11. The documents that Cingular's designee(s) relies on to provide answers to the topics of schedule A.

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1392                    - 7 -                Schedules A and B to Broadcom's Subpoena to Cingular Wireless

EXHIBIT 1
PAGE 9 OF 10



12.    The most recent available CV or resume, not prepared for litigation, of each Cingular designee.

# EXHIBIT 2

1  MICHELE A. POWERS (State Bar No. 174779)
   SAYEMA HAMEED (State Bar No. 223193)
2  WESTON, BENSHOOF, ROCHEFORT,
       RUBALCAVA & MacCUISH LLP
3  333 South Hope Street
   Sixteenth Floor
4  Los Angeles, California 90071
   Telephone: (213) 576-1000
5  Facsimile: (213) 576-1100

6  Attorneys for Cingular Wireless LLC

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  QUALCOMM INCORPORATED,          Case No.: 05 CV 1392

12            Plaintiff,            **CINGULAR WIRELESS LLC'S
                                    RESPONSE AND OBJECTIONS TO**
13       v.                         **DEFENDANT BROADCOM
                                    CORPORATION'S DEPOSITION**
14  BROADCOM CORPORATION,           **SUBPOENA FOR PRODUCTION OF
                                    BUSINESS RECORDS AND**
15            Defendant.            **TESTIMONY**

16

17

18       Third-party deponent Cingular Wireless LLC ("Cingular") hereby

19  responds and objects to the Subpoena in a Civil Case for Deposition and Production of

20  Business Records ("Subpoena") served upon Cingular by the Defendant Broadcom

21  Corporation ("Broadcom") on or about August 30, 2006 and requesting production of

22  documents on or before September 18, 2006 as well as the deposition of persons most

23  knowledgeable as to certain categories of information on September 19, 2006. The

24  parties mutually agreed to continue Cingular's date for objection to the Subpoena

25  pursuant to F.R.C.P. Rule 45 to September 13, 2006, and as such, the instant

26  responses and objections are made in a timely manner without waiver of any right,

27  defense or privilege.

28

850585.1

**EXHIBIT 2
PAGE 1 OF 14**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

## INTRODUCTORY STATEMENT

The responses and objections below are provided without waiver of Cingular's right to amend, modify or supplement these responses and objections.

## GENERAL OBJECTIONS

Cingular makes the following general objections to each of the Requests for Production as to both Deposition Topics and Documents and Things ("Request" or collectively the "Requests") set forth in Broadcom's Subpoena. All of Cingular's responses are expressly subject to these objections in addition to any specific objections which may be made on an individual basis in the separate responses set forth below:

1.     Cingular objects to the Requests on the grounds that they are vague, ambiguous, and require speculation in order to respond. Accordingly, Cingular reserves the right to modify, amend or add to its responses and objections. For each of its responses, Cingular has responded based on its best understanding of the request as indicated more specifically below.

2.     Cingular objects to the Requests to the extent they can be regarded as calling for documents protected by the attorney-client and/or work-product privileges. Cingular will interpret the Requests as not calling for the production of such privileged documents. Cingular will provide an appropriate privilege log if requested by Broadcom.

3.     Cingular objects to the Requests as unduly burdensome insofar as they require Cingular to produce documents equally available to Broadcom and in the public domain. Cingular also objects to the Requests as unduly burdensome to the extent they seek information within the possession, custody or control of Broadcom and/or other persons or entities.

4.     Cingular objects to the Requests as overbroad and unduly burdensome to the extent they are not written with the requisite specificity, including a failure to provide any temporal limitation, resulting in an extraordinarily large volume

850585.1

EXHIBIT 2
PAGE 2 OF 14

1   of documentary evidence being responsive the retrieval, review and production of
2   which will cause Cingular to incur significant expense as a third party.    Cingular
3   further objects to the Requests as overbroad and unduly burdensome to the extent they
4   seek documents that are either not relevant or not reasonably calculated to lead to the
5   discovery of admissible evidence concerning the subject of this action.

6        5.    Cingular objects to these Requests and to each and every
7   individual request contained therein, to the extent that they call for information that is
8   confidential or proprietary to, or the trade secrets of Cingular and/or a third party.
9   Each such Request is overly broad, unduly burdensome, oppressive and seeks to
10  impose obligations beyond those permitted by F.R.C.P. Rule 26.

11       6.    Cingular objects to Requests that would require the production of
12  documents or information that are subject to the rights of privacy of the responding
13  party, or others, as calling for the production of private, protected, privileged and
14  confidential information.    To the extent information or documents related to
15  Cingular's prospective product development or business development plans and goals
16  are implicated or responsive to the Requests said information and/or documents will
17  categorically not be produced as Cingular objects to the Requests as unduly
18  burdensome, oppressive and as seeking information that is not reasonably related or
19  relevant to the subject matter of this action.

20       7.    These responses are made solely for the purpose of discovery in
21  this action.  Nothing herein is intended to waive the following objections, which are
22  expressly reserved:    All objections as to competency, relevancy, authenticity,
23  propriety, materiality and admissibility of the subject matter of the discovery requests;
24  all objections as to vagueness, ambiguity, or undue burden; all objections on any
25  ground as to the use of any information provided in response to these discovery
26  Requests; all objections on any ground to any request for further responses to these or
27  other discovery requests; and any and all other objections and grounds which would or
28  could require or permit the exclusion of any document or statement therein from

850583.1

EXHIBIT 2
PAGE 3 OF 14

1  evidence, all of which objections and grounds are reserved and may be interposed at

2  the time of trial.

3        8.    Except for facts specifically admitted herein, no admission of any

4  nature whatsoever is to be implied or inferred. The fact that any Request has been

5  answered should not be taken as an admission or concession of the existence of any

6  facts set forth or assumed by any Request, or that such answer constitutes evidence of

7  any fact thus set forth or assumed.

8                **RESPONSES AND OBJECTIONS**

9  <u>**DEPOSITION TOPICS**</u>

10        Cingular objects to the location of the place of deposition as unduly

11  burdensome as Cingular is a third party, is headquartered in Atlanta, Georgia and none

12  of its witness designees are located within 100 miles of Wilmington, Delaware. In

13  addition, Cingular generally objects to the September 19, 2006 date set for deposition

14  as unduly burdensome in that Cingular is in the process of determining the corporate

15  designees best able to respond to the categories of information sought and it requires

16  additional time to locate, prepare and produce said deponents.

17  <u>**OBJECTIONS TO CATEGORY NO. 1:**</u>

18        Cingular objects to this subject matter category on the grounds that it

19  seeks information which is privileged, sensitive, confidential, proprietary and

20  constitutes a trade secret of either Cingular and/or a third party. With the exception of

21  any information related to Cingular's prospective product development or business

22  development plans and goals and subject to the terms of the Stipulated Protective

23  Order in this action, Cingular will work with Broadcom in appropriately limiting the

24  scope of this request and will designate a corporate representative to testify

25  concerning the subject matter of this category to the extent Cingular has responsive

26  information that is not available through other parties or the public domain.

27  <u>**OBJECTIONS TO CATEGORY NO. 2:**</u>

28        Cingular objects to this subject matter category on the grounds that it

EXHIBIT 2
PAGE 4 OF 14

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

1   seeks information which is privileged, sensitive, confidential, proprietary and
2   constitutes a trade secret of either Cingular and/or a third party.  Discovery is
3   continuing and on-going and Cingular is conducting a diligent and good faith search
4   to determine if it is in possession of information responsive to this request.  With the
5   exception of any information related to Cingular's prospective product development
6   or business development plans and goals and subject to the terms of the Stipulated
7   Protective Order in this action, Cingular will work with Broadcom in appropriately
8   limiting the scope of this request and will designate a corporate representative to
9   testify concerning the subject matter of this category to the extent Cingular has
10  responsive information that is not available through other parties or the public domain.

11  **OBJECTIONS TO CATEGORY NO. 3:**

12       Cingular objects to this subject matter category on the grounds that: (1) it
13  seeks information which is privileged, sensitive, confidential, proprietary and
14  constitutes a trade secret of either Cingular and/or a third party, and (2) it is overbroad
15  as to subject matter.  With the exception of any information related to Cingular's
16  prospective product development or business development plans and goals and subject
17  to the terms of the Stipulated Protective Order in this action, Cingular will work with
18  Broadcom in appropriately limiting the scope of this request and will designate a
19  corporate representative to testify concerning the subject matter of this category to the
20  extent Cingular has responsive information that is not available through other parties
21  or the public domain.

22  **OBJECTIONS TO CATEGORY NO. 4:**

23       Cingular objects to this subject matter category on the grounds that: (1) it
24  seeks information which is privileged, sensitive, confidential, proprietary and
25  constitutes a trade secret of either Cingular and/or a third party, (2) it is overbroad as
26  to subject matter, and (3) it seeks information equally available to Broadcom, in the
27  public domain and/or within the possession, custody or control of Broadcom and/or
28  other persons or entities.  With the exception of any information related to Cingular's

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850545 1

EXHIBIT 2
PAGE 5 OF 14

1  prospective product development or business development plans and goals and subject

2  to the terms of the Stipulated Protective Order in this action, Cingular will work with

3  Broadcom in appropriately limiting the scope of this request and will designate a

4  corporate representative to testify concerning the subject matter of this category to the

5  extent Cingular has responsive information that is not available through other parties

6  or the public domain.

7  **OBJECTIONS TO CATEGORY NO. 5:**

8      Cingular objects to this subject matter category on the grounds that it

9  seeks information which is privileged, sensitive, confidential, proprietary and

10  constitutes a trade secret of either Cingular and/or a third party. With the exception of

11  any information related to Cingular's prospective product development or business

12  development plans and goals and subject to the terms of the Stipulated Protective

13  Order in this action, Cingular will work with Broadcom in appropriately limiting the

14  scope of this request and will designate a corporate representative to testify

15  concerning the subject matter of this category to the extent Cingular has responsive

16  information that is not available through other parties or the public domain.

17  **OBJECTIONS TO CATEGORY NO. 6:**

18      Cingular objects to this subject matter category on the grounds that: (1) it

19  seeks information that is protected by the attorney-client privilege and/or the work

20  product doctrine, and (2) it seeks information which is privileged, sensitive,

21  confidential, proprietary and constitutes a trade secret of either Cingular and/or a third

22  party. Cingular will interpret the Request to seek information outside the scope of the

23  attorney-client privilege and work product doctrine. With the exception of any

24  information related to Cingular's prospective product development or business

25  development plans and goals and subject to the terms of the Stipulated Protective

26  Order in this action, Cingular will work with Broadcom in appropriately limiting the

27  scope of this request and will designate a corporate representative to testify

28  concerning the subject matter of this category to the extent Cingular has responsive

EXHIBIT 2
PAGE 6 OF 14

850595.1

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

1   information that is not available through other parties or the public domain.

2   **OBJECTIONS TO CATEGORY NO. 7:**

3       Cingular objects to this subject matter category on the grounds that: (1) it

4   seeks information that is protected by the attorney-client privilege and/or the work

5   product doctrine, and (2) it seeks information which is privileged, sensitive,

6   confidential, proprietary and constitutes a trade secret of either Cingular and/or a third

7   party. Cingular will interpret the Request to seek information outside the scope of the

8   attorney-client privilege and work product doctrine.   With the exception of any

9   information related to Cingular's prospective product development or business

10  development plans and goals and subject to the terms of the Stipulated Protective

11  Order in this action, Cingular will work with Broadcom in appropriately limiting the

12  scope of this request and will designate a corporate representative to testify

13  concerning the subject matter of this category to the extent Cingular has responsive

14  information that is not available through other parties or the public domain.

15  **SCHEDULE B**

16  **REQUESTS FOR DOCUMENTS AND THINGS:**

17      Cingular objects to the September 18, 2006 date set for production of

18  documents as unduly burdensome given the scope and breadth of the information

19  sought in the Requests as it requires additional time to locate, review and produce the

20  responsive, non-privileged or otherwise protected documents within its possession,

21  custody and control.

22  **OBJECTIONS TO CATEGORY NO. 1:**

23      Cingular objects to this subject matter category on the grounds that it

24  seeks information which is privileged, sensitive, confidential, proprietary and

25  constitutes a trade secret of either Cingular and/or a third party.  Cingular further

26  objects to this Request as vague and ambiguous regarding the definition of "Cingular

27  Device" set forth therein as it is difficult if not impossible to determine the meaning of

28  the phrase "offered for sale by or for Cingular".   With the exception of any

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850283.1

**EXHIBIT 2**
**PAGE 7 OF 14**

1   information related to Cingular's prospective product development or business

2   development plans and goals and subject to the terms of the Stipulated Protective

3   Order in this action, Cingular will work with Broadcom in appropriately limiting the

4   scope of this request and will produce the responsive non-privileged or otherwise

5   protected documents within its possession, custody and control concerning the subject

6   matter of this category to the extent Cingular has responsive information that is not

7   available through other parties or the public domain.

8   **OBJECTIONS TO CATEGORY NO. 2:**

9           Cingular is conducting a diligent and good faith search to determine what

10  responsive samples are within its possession, custody and control. Cingular further

11  objects to this Request as vague and ambiguous regarding the definition of "Cingular

12  Device" set forth therein as it is difficult if not impossible to determine the meaning of

13  the phrase "offered for sale by or for Cingular".   With the exception of any

14  information related to Cingular's prospective product development or business

15  development plans and goals and subject to the terms of the Stipulated Protective

16  Order in this action, to the extent responsive samples are found and with the proviso

17  that Broadcom agree to reimburse Cingular for the cost of said samples, Cingular will

18  work with Broadcom in appropriately limiting the scope of this request and will

19  produce the responsive non-privileged or otherwise protected documents within its

20  possession, custody and control concerning the subject matter of this category to the

21  extent Cingular has responsive information that is not available through other parties

22  or the public domain.

23  **OBJECTIONS TO CATEGORY NO. 3:**

24          Cingular objects to this subject matter category on the grounds that: (1) it

25  seeks information which is privileged, sensitive, confidential, proprietary and

26  constitutes a trade secret of either Cingular and/or a third party, (2) it is overbroad as

27  to subject matter, and (3) it seeks information equally available to Broadcom, in the

28  public domain and/or within the possession, custody or control of Broadcom and/or

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850585.1

EXHIBIT 2
PAGE 8 OF 14

1    other persons or entities.  Cingular further objects to this Request as vague and
2    ambiguous regarding the definition of "Cingular Device" set forth therein as it is
3    difficult if not impossible to determine the meaning of the phrase "offered for sale by
4    or for Cingular".  Discovery is continuing and on-going and Cingular is conducting a
5    diligent and good faith search to determine if it is in possession of documents
6    responsive to this request.    With the exception of any information related to
7    Cingular's prospective product development or business development plans and goals
8    and subject to the terms of the Stipulated Protective Order in this action, Cingular will
9    work with Broadcom in appropriately limiting the scope of this request and will
10   produce the responsive non-privileged or otherwise protected documents within its
11   possession, custody and control concerning the subject matter of this category to the
12   extent Cingular has responsive information that is not available through other parties
13   or the public domain.

14   **OBJECTIONS TO CATEGORY NO. 4:**

15           Cingular objects to this subject matter category on the grounds that: (1) it
16   seeks information which is privileged, sensitive, confidential, proprietary and
17   constitutes a trade secret of either Cingular and/or a third party, (2) it is overbroad as
18   to subject matter and volume of information sought, and (3) it seeks information
19   equally available to Broadcom, in the public domain and/or within the possession,
20   custody or control of Broadcom and/or other persons or entities.  With the exception
21   of any information related to Cingular's prospective product development or business
22   development plans and goals and subject to the terms of the Stipulated Protective
23   Order in this action, Cingular will work with Broadcom in appropriately limiting the
24   scope of this request and will produce the responsive non-privileged or otherwise
25   protected documents within its possession, custody and control concerning the subject
26   matter of this category to the extent Cingular has responsive information that is not
27   available through other parties or the public domain.
28

EXHIBIT 2
PAGE 9 OF 14

1    **OBJECTIONS TO CATEGORY NO. 5:**

2         Cingular objects to this subject matter category on the grounds that: (1) it

3    seeks information which is privileged, sensitive, confidential, proprietary and

4    constitutes a trade secret of either Cingular and/or a third party, (2) it is overbroad as

5    to subject matter and volume of responsive information sought, and (3) it seeks

6    information equally available to Broadcom, in the public domain and/or within the

7    possession, custody or control of Broadcom and/or other persons or entities. Cingular

8    further objects to this Request as vague and ambiguous regarding the definition of

9    "Cingular Device" set forth therein as it is difficult if not impossible to determine the

10   meaning of the phrase "offered for sale by or for Cingular". With the exception of

11   any information related to Cingular's prospective product development or business

12   development plans and goals and subject to the terms of the Stipulated Protective

13   Order in this action, Cingular will work with Broadcom in appropriately limiting the

14   scope of this request and will produce the responsive non-privileged or otherwise

15   protected documents within its possession, custody and control concerning the subject

16   matter of this category to the extent Cingular has responsive information that is not

17   available through other parties or the public domain.

18   **OBJECTIONS TO CATEGORY NO. 6:**

19        Cingular objects to this subject matter category on the grounds that: (1) it

20   seeks information which is privileged, sensitive, confidential, proprietary and

21   constitutes a trade secret of either Cingular and/or a third party, (2) it is overbroad as

22   to subject matter and volume of responsive information sought, and (3) it seeks

23   information equally available to Broadcom, in the public domain and/or within the

24   possession, custody or control of Broadcom and/or other persons or entities. Cingular

25   further objects to this Request as vague and ambiguous regarding the definition of

26   "Cingular Device" set forth therein as it is difficult if not impossible to determine the

27   meaning of the phrase "offered for sale by or for Cingular". With the exception of

28   any information related to Cingular's prospective product development or business

WESTON BENSHOOF ROCHEFORT RUBALCAVA MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

1    development plans and goals and subject to the terms of the Stipulated Protective

2    Order in this action, Cingular will work with Broadcom in appropriately limiting the

3    scope of this request and will produce the responsive non-privileged or otherwise

4    protected documents within its possession, custody and control concerning the subject

5    matter of this category to the extent Cingular has responsive information that is not

6    available through other parties or the public domain.

7    **OBJECTIONS TO CATEGORY NO. 7:**

8          Cingular objects to this subject matter category on the grounds that: (1) it

9    seeks information which is privileged, sensitive, confidential, proprietary and

10    constitutes a trade secret of either Cingular and/or a third party, and (2) it seeks

11    information within the possession, custody or control of Broadcom and/or other

12    persons or entities. With the exception of any information related to Cingular's

13    prospective product development or business development plans and goals and subject

14    to the terms of the Stipulated Protective Order in this action, Cingular will work with

15    Broadcom in appropriately limiting the scope of this request and will produce the

16    responsive non-privileged or otherwise protected documents within its possession,

17    custody and control concerning the subject matter of this category to the extent

18    Cingular has responsive information that is not available through other parties or the

19    public domain.

20    **OBJECTIONS TO CATEGORY NO. 8:**

21          Cingular objects to this subject matter category on the grounds that it

22    seeks information which is privileged, sensitive, confidential, proprietary and

23    constitutes a trade secret of either Cingular and/or a third party. Discovery is

24    continuing and on-going and Cingular is conducting a diligent and good faith search

25    to determine if it is in possession of documents responsive to this request. With the

26    exception of any information related to Cingular's prospective product development

27    or business development plans and goals and subject to the terms of the Stipulated

28    Protective Order in this action, Cingular will work with Broadcom in appropriately

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850585.1

**EXHIBIT 2**
**PAGE 11 OF 14**

1  limiting the scope of this request and will produce the responsive non-privileged or

2  otherwise protected documents within its possession, custody and control concerning

3  the subject matter of this category to the extent Cingular has responsive information

4  that is not available through other parties or the public domain.

5  **OBJECTIONS TO CATEGORY NO. 9:**

6      Cingular objects to this subject matter category on the grounds that: (1) it

7  seeks information that is protected by the attorney-client privilege and/or the work

8  product doctrine, and (2) it seeks information which is privileged, sensitive,

9  confidential, proprietary and constitutes a trade secret of either Cingular and/or a third

10  party  Cingular will interpret the Request to seek information outside the scope of the

11  attorney-client privilege and work product doctrine.  Cingular further objects to this

12  Request to the extent it assumes Cingular would have any knowledge of what

13  communications between it and Qualcomm relate to any patent suit between

14  Qualcomm and Broadcom as Cingular is not a party to the litigation, does not

15  generally or specifically concern itself with the parties' respective patents and, as

16  such, is not in a position to accurately determine what communications if any would

17  "relate" to the subject litigation.    With the exception of any information related to

18  Cingular's prospective product development or business development plans and goals

19  and subject to the terms of the Stipulated Protective Order in this action, Cingular will

20  work with Broadcom in appropriately limiting the scope of this request and will

21  produce the responsive non-privileged or otherwise protected documents within its

22  possession, custody and control concerning the subject matter of this category to the

23  extent Cingular has responsive information that is not available through other parties

24  or the public domain.

25  **OBJECTIONS TO CATEGORY NO. 10:**

26      Cingular objects to this subject matter category on the grounds that it

27  seeks information which is privileged, sensitive, confidential, proprietary and

28  constitutes a trade secret of either Cingular and/or a third party  Cingular further

WESTON BENSHOOF ROCHEFORT RUBALCAVA MACCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850525 1

EXHIBIT 2
PAGE 12 OF 14

1  objects to this Request as vague and ambiguous regarding the definition of "Cingular

2  Device" set forth therein as it is difficult if not impossible to determine the meaning of

3  the phrase "offered for sale by or for Cingular".  Discovery is continuing and on-

4  going and Cingular is conducting a diligent and good faith search to determine if it is

5  in possession of documents responsive to this request.  With the exception of any

6  information related to Cingular's prospective product development or business

7  development plans and goals and subject to the terms of the Stipulated Protective

8  Order in this action, Cingular will work with Broadcom in appropriately limiting the

9  scope of this request and will produce the responsive non-privileged or otherwise

10  protected documents within its possession, custody and control concerning the subject

11  matter of this category to the extent Cingular has responsive information that is not

12  available through other parties or the public domain.

13  **OBJECTIONS TO CATEGORY NO. 11:**

14      Cingular objects to this subject matter category on the grounds that it

15  seeks information which is privileged, sensitive, confidential, proprietary and

16  constitutes a trade secret of either Cingular and/or a third party.  Subject to the terms

17  of the Stipulated Protective Order in this action, to the extent responsive documents

18  exist Cingular will produce the responsive non-privileged or otherwise protected

19  documents within its possession, custody and control.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Weston Benshoof Rochefort Rubalcava MacCuish LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850585.1

EXHIBIT 2
PAGE 13 OF 14

**OBJECTIONS TO CATEGORY NO. 12:**

        To the extent responsive documents exist Cingular will produce the responsive non-privileged or otherwise protected documents within its possession, custody and control.

DATED: September 18, 2006    MICHELE A. POWERS
                                SAYEMA HAMEED
                                WESTON, BENSHOOF, ROCHEFORT,
                                  RUBALCAVA & MacCUISH LLP

                                  Michele A. Powers
                      Attorneys for CINGULAR WIRELESS LLC

WESTON BENSHOOF ROCHEFORT RUBALCAVA & MacCUISH LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071

850585.1

EXHIBIT 2
PAGE 14 OF 14

# EXHIBIT 3

**From:** MPOWERS@wbcounsel.com [mailto:MPOWERS@wbcounsel.com]
**Sent:** Monday, October 02, 2006 12:27 PM
**To:** Brian Blanco
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com; MPOWERS@wbcounsel.com
**Subject:** Broadcom Supboena - Summary of Meet and Confer

Hello Brian -

This will confirm our meet and confer conversation on Friday, September 29th, relating to and narrowing the scope of Broadcom's deposition subpoena to Cingular Wireless. Below I have set out my understanding of what we discussed and agreed to regarding the scope of Broadcom's inquiry and the specific features and information sought.

**Deposition Topics –**

1. Broadcom is interested in handheld devices for this category of information and not the network/base station side of operations. Broadcom wants to know what phones that incorporate the Qualcomm MSM chip series (makes/models) operate on Cingular's network. I explained about the stock/nonstock difference and advised that the vendors are the best source for this information – particularly the number made/sold of the various models as well as nonstock devices generally. I understand that Broadcom has served the vendors with subpoenas and that you will be checking to see if you have a source for the numbers made and sold. I also understand that regardless of the third party source, Broadcom still requires whatever information Cingular may have as the numbers go to Broadcom's damage claim. I will investigate further regarding the general availability of this data and the nature of any confidentiality issues.

2. This topic addresses the network side. Broadcom wants to know what support Qualcomm has provided regarding installation, service, repair, configuration, etc. relating to the cell search procedure. I informed you that the extent of Qualcomm's support on the network side is best found out through the third party vendors because as a general rule Cingular does not work directly with the chip manufacturers on the network side. Cingular can at minimum provide the names of the main network vendors utilized for the various technologies on Cingular's network. I also informed you, that there are a couple distinct

10/2/2006

**EXHIBIT 3**
**PAGE 1 OF 40**

occasions when Qualcomm has worked with our network and provided support. This is very much the exception rather than the rule. I am as yet uncertain whether these occasions involved the cell search procedure or not and am following up on our internal investigation.

Due to the limited nature of the interaction between Cingular and Qualcomm on the network side we discussed the possibility of providing a declaration in lieu of a deponent (this would apply to category 5 below as well). You indicated that would be acceptable from Broadcom's perspective. I have yet to meet and confer with Qualcomm, and its subpoena seemed to focus more on the network side. If Cingular ends up providing a deponent for Qualcomm on the network side we may simply proceed with a deposition. I will keep you advised.

3-4. Broadcom is interested in inquiring into Qualcomm's support, communications, promotions, testing, etc. for two features:

1. WCDMA/UMTS 3 step cell search procedure
2. GPRS – access procedure using uplink state flag;

       - dynamic allocation after axis procedure

Broadcom wants information on testing – certification, verification. It is interested in both testimony and documents demonstrating testing of the above features and that these features are present and that devices with these features operate on the Cingular network. Broadcom wants information on testing – including electronic data – on these features if it is possible to differentiate or draw a boundary around the data related to these features and simply produce that as opposed to 'all' tests. Broadcom is not interested in the email minutia of trouble shooting unless these emails relate to the above features and can be relatively easily found/sorted. Broadcom is also interested in testimony and documents relating to QUALCOMM roadmaps and presentations to Cingular, etc., if these are addressing the particular key features.

5. Broadcom is interested in learning whether Qualcomm tests prototypes on Cingular's network (the "FFA's") and if Cingular has access to testing on Qualcomm's network. Broadcom's inquiry here is a bit broader as it is interested in learning about the Qualcomm/Cingular relationship generally before testing occurs, how this works and the specific tests that either entity can use on the respective networks.

Broadcom wants information on the nature of Qualcomm's support on both the device and network side. How much interface time does Qualcomm have with Cingular and what is the nature of the relationship. When Qualcomm performs tests on Cingular's network – assuming it does – does it do anything to Cingular's equipment to change parameters, etc.

6. I generally advised that this line of inquiry will be permitted except for information protected by the attorney client and work product privileges (essentially either Weston Benshoof attorneys' or in-house counsel's actions in responding to the subpoena).

10/2/2006

EXHIBIT 3
PAGE 2 OF 40

**Documents**--

The "Cingular Device" definition in this section only addresses handsets/handhelds and does not encompass technology on the network/base station side.

1. See number 1 above.

2. I advised that Broadcom will need to pay Cingular for the actual equipment produced. You are checking on whether Broadcom will agree to payment and will let me know. I generally explained the three categories of equipment and their availability for production:

A. Used to sell/out of stock/out dated – Cingular may have these, and I will check into availability;
B. Currently sell/offer – Cingular will produce these provided Broadcom agrees to reimburse it for the cost;
C. Prototypes or in process of development/testing, etc. – Cingular will not produce these items. These are in very limited supply and Cingular requires every last one for Cingular's use.

Of course, these categories are further limited in that Cingular will only produce those items that it actually has on hand during the regular course of business. This is unlikely to include nonstock devices.

3-6. See 3-4 above re general scope of documents/information sought.

For categories 4 and 5 re: results of certification testing requirements and procedures - I informed you that it is my understanding form Cingular that these are produced to Qualcomm as well as Broadcom every quarter. As a result, Broadcom should have them and/or be able to obtain them through Qualcomm. I understand that as of Friday, these had not yet been produced by Qualcomm. It is also my understanding that Qualcomm recently delivered additional documents and that you will check to determine if these categories of documents are in this recent production.

7. I advised that Cingular will produce some agreements but not all. Those that are being withheld address prospective highly sensitive projects that Cingular will not disclose.

8. I informed you that from the results of our internal investigation to date, Cingular does not have access to any Qualcomm website or intranet pages. You informed me that there is a Qualcomm troubleshooting system whereby individuals may submit inquiries through a web based system. I agreed to follow up and double check on this category of documents.

9. I informed you that to the best of Cingular's knowledge there are no documents in this category. Generally the Cingular employees interviewed thus far are not aware of the patents at issue and are not concerned with the litigation between Qualcomm and Broadcom. To the extent this category of information would require Cingular to conduct a search through individual's emails to determine if there is any mention of the litigation, such

a search would be the equivalent of looking for a needle in a haystack and the burden on Cingular far outweighs any potential benefit. As a result, no documents will be produced.

10. You informed me that Qualcomm has referenced computer software that it has which vendors can use. Broadcom wants to know if Cingular has access to this software and/or uses the software. The Qualcomm software provides options for the handsets and allows different options to be turned on or off. Broadcom wants documents (if they exist) that aid it in determining if Cingular modifies lines of Qualcomm software code for the options or if Cingular use the options in the code. Broadcom is further interested in determining if Cingular utilizes Qualcomm for support – i.e. recommendations re: use of options on devices for certification efforts or helping gain functionality with the network.

### Conclusion

As a general rule to the above categories, I reiterated Cingular's objections to the production of any information addressing or relating to its prospective business plans or products in development. Generally this was acceptable to Broadcom with the exception of responsive information relating to the MSM7600 chip. I agreed to look into the MSM7600 chip further. In addition to the objection relating to confidential prospective information, this meet and confer is subject to Cingular's objections and nothing is intended as a waiver of those objections.

We also discussed Cingular's requirement of reimbursement for its reasonable fees and costs relating to the preparation and deposition of deponents. I also indicated that as Cingular proceeds with the document production and is better able to determine the volume of documents to be produced, Cingular may also require reimbursement for its reasonable costs and expenses prior to production. As you are aware reasonable costs and expenses, which can include attorneys fees, are available under FRCP Rule 45. You stated that you will get back to me on Broadcom's position relative to the reimbursement issue.

Finally, we discussed timing issues and the need for proceeding as expeditiously as possible given the impending expert report deadlines. You were going to advise of when that date is exactly. I indicated that Cingular will proceed as quickly as possible with the document production as well as the identification of witnesses, their preparation and deposition. While I have not yet determined the potential witnesses' availability, we discussed the possibility of depositions taking place the week of October 23rd or the following week or two. Certainly, the week of October 23rd would be the earliest the depositions could possibly go forward at least from Cingular's perspective.

Please let me know if there are any additions/changes to the above given your understanding of our discussions. Thank you for your cooperation in working through these issues.

Regards,

Michele A. Powers

10/2/2006

EXHIBIT 3
PAGE 4 OF 40

**WESTON BENSHOOF ROCHEFORT**
**RUBALCAVA MacCUISH LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Direct Line: (213) 576-1030
Cell: (310) 696-9225
E-Mail: mpowers@wbcounsel.com

For more information about Weston Benshoof, please visit our website at www.wbcounsel.com.

CONFIDENTIALITY NOTICE:  This e-mail and any files attached may contain confidential infor
If you are not the intended recipient, or a person responsible for delivering it, you are
copying, distribution or use of any of the information contained in or attached to this tr
If you have received this transmission in error, please destroy the original transmission
or saving in any manner.

IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal
inform you that any U.S. tax advice contained in this communication (including any attachm
and cannot be used by any person or entity, for the purpose of (i) avoiding penalties unde
promoting, marketing, or recommending to another party any transaction or matter addressed

EXHIBIT 3
PAGE 5 OF 40

10/2/2006

**From:** MPOWERS@wbcounsel.com [mailto:MPOWERS@wbcounsel.com]
**Sent:** Tuesday, October 10, 2006 1:41 PM
**To:** Brian Bianco
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com; MPOWERS@wbcounsel.com
**Subject:** RE: Broadcom Cingular Supboena - Further Meet and Confer

Hello Brian -

I have not heard back from you in response to my email below nor in regard to a few outstanding items from our meet and confer concerning Broadcom's Subpoena to Cingular.

Preliminarily, you were going to check on Broadcom's position regarding reimbursing Cingular its reasonable costs and expenses for production of the documents and devices sought under the subpoena as well as its reasonable attorneys fees and costs for preparing and defending witnesses. Cingular is reluctant to proceed with gathering the requested information and will not produce any documents until we reach an agreement on reimbursement. Clearly Cingular is entitled to reimbursement of the costs for the various handsets and devices that are responsive to RFP no. 2. In addition, Cingular is legally entitled to reimbursement of its costs for employee time spent in responding to the subpoena particularly given the breadth of some of the requests even as currently limited. Similarly, if there are significant expenses incurred as a result of copying costs, these will require reimbursement as well. Finally, it is Cingular's position that Broadcom should reimburse it for its reasonable attorneys fees and costs relating to witness preparation and defense of the depositions. This is particularly true when Broadcom is insisting on proceeding forward with a deposition on the network side of issues when quite likely a declaration would suffice. It is of course Broadcom's right to proceed with the deposition and Cingular will produce a deponent for these particular categories of information. However, Cingular should not be required to shoulder the cost. Please provide me with Broadcom's proposal regarding reimbursement as soon as possible.

In addition, you were going to check to see if some of the categories of documents responsive to the subpoena had been produced by Qualcomm or if Broadcom would require Cingular's production of responsive documentation. Specifically this inquiry related to RFP categories numbers 4 and 5. Please advise as to the status and whether these documents will be required.

In regard to RFP number 8, I have again reconfirmed that Cingular does not have access to any Qualcomm website or interactive Intranet/internet pages. If Cingular is involved with troubleshooting with Qualcomm this is performed via email or in person or on the phone as I previously advised. Much of the troubleshooting is conducted through vendors, as one would assume. In any event, there are no responsive documents for this category.

As for RFP number 10 - and this relates to my prior email inquiry, please provide the name of the Qualcomm software Broadcom is interested in learning about. Cingular needs that in order to respond effectively. Cingular is aware of various debugging, logging and development tools that Qualcomm has available for device developers, operators, and application developers. Cingular never touches or changes firmware or code from a vendor or chipset/platform vendor - it obtains new software builds form the vendors that incorporate the changes Cingular requires.

10/10/2006

**EXHIBIT 3**
**PAGE 6 OF 40**

In regard to deposition and document categories number 1, the information requested is considered highly confidential by Cingular. Having it made public could impact Cingular adversely in its business relationships with various vendors. As such, this information will only be produced under the highest category of protection under the Protective Order – attorneys eyes only. Cingular requires that Broadcom accept this designation prior to production and agree that the documents will be subject to the highest level of protection possible under the Protective Order. Please confirm Broadcom's agreement.

Finally, regarding my prior inquiry relating to the scope of timing for the responsive documents and depositions, I had proposed a five year limit or October 2001. Qualcomm has agreed to this limitation as to scope for its subpoena. Cingular will proceed with this as an acceptable scope of production for both the deposition information and documents unless Broadcom advises otherwise. Of course, simply by agreeing to this limit does not mean that Cingular will have responsive documents or device hardware still in its possession, custody or control given usual business retention practices.

Nothing in this correspondence is intended as a waiver of Cingular's objections to the subpoena or its rights to object further, and all documents or information including testimony produced are and continue to be covered by said objections.

I imagine that you are quite busy this week with your upcoming wedding this weekend. Congratulations, again, and I hope you have a wonderful time both this weekend and on your honeymoon. Please provide me with a contact person at your firm that will be responsible for continuing this dialogue and moving forward with scheduling depositions in your absence.

Regards.

Michele A. Powers
**WESTON BENSHOOF ROCHEFORT**
    **RUBALCAVA MacCUISH LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Direct Line: (213) 576-1030
Cell: (310) 695-9225
E-Mail: mpowers@wbcounsel.com

---

**From:** Michele Powers
**Sent:** Tuesday, October 03, 2006 3:55 PM
**To:** 'bblanco@mhmlaw.com'
**Cc:** Sayema Hameed; Heather Thai; Michele Powers
**Subject:** RE: Broadcom Supboena - Summary of Meet and Confer

I agree it was not clear, but this is - we will plan on proceeding forward with a deponent in that case.

An important element of the scope of production I realized we did not discuss. Currently your subpoena has no limit as to time. What is the time frame on the technology in question - namely the UMTS 3 step search and the other GPRS access procedure? We need to cut the time frame down to a reasonable period - say the last five years?

In addition, can you please explain the relevance of the Qualcomm software (Doc Request No. 10) to the litigation? Do you only want to know about the use of this software (if it is used) in the context of the two features that are the focus of the subpoena? Or, are you looking for a broader range of use?

**EXHIBIT 3**
**PAGE 7 OF 40**

10/10/2006

Thanks,

Michele A. Powers
**WESTON BENSHOOF ROCHEFORT**
   **RUBALCAVA MacCUISH LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Direct Line: (213) 576-1030
Cell: (310) 696-9225
E-Mail: mpowers@wbcounsel com

---

**From:** bblanco@mhmlaw.com [mailto:bblanco@mhmlaw.com]
**Sent:** Tuesday, October 03, 2005 10:18 AM
**To:** Michele Powers
**Cc:** Sayema Hameed; Heather Thal
**Subject:** FW: Broadcom Supboena - Summary of Meet and Confer

Hi Michele,

After reviewing my last communication, I realize it is not clear. We do not agree to receive testimony by
declaration

Best regards,

Brian

---

**From:** Brian Blanco
**Sent:** Tuesday, October 03, 2005 12:07 PM
**To:** 'MPOWERS@wbcounsel com'
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com
**Subject:** RE: Broadcom Supboena - Summary of Meet and Confer

Hi Michele,

With regards to the declaration idea, absent a stipulation by Qualcomm, we need the information in the form of a
witness That does not mean that you cannot prepare a single 30(b)(6) witness with the declaration, and then we
can ask questions pertaining to the declaration. Just a thought.

Best regards.

Brian

**EXHIBIT 3**
**PAGE 8 OF 40**

10/10/2006

**From:** Brian Bianco
**Sent:** Tuesday, October 10, 2006 6:08 PM
**To:** 'MPOWERS@wbcounsel.com'
**Cc:** 'shameed@wbcounsel.com'; 'HTHAI@wbcounsel.com'; Greg Schodde
**Subject:** Re: Broadcom Cingular Supboena - Further Meet and Confer

Hi Michele,

Please see the responses below.    

Thank you and best regards.

Brian

**From:** MPOWERS@wbcounsel.com [mailto:MPOWERS@wbcounsel.com]
**Sent:** Tuesday, October 10, 2006 1:41 PM
**To:** Brian Bianco
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com; MPOWERS@wbcounsel.com
**Subject:** RE: Broadcom Cingular Supboena - Further Meet and Confer

Hello Brian -

I have not heard back from you in response to my email below nor in regard to a few outstanding items from our meet and confer concerning Broadcom's Subpoena to Cingular.

Preliminarily, you were going to check on Broadcom's position regarding reimbursing Cingular its reasonable costs and expenses for production of the documents and devices sought under the subpoena as well as its reasonable attorneys fees and costs for preparing and defending witnesses. Cingular is reluctant to proceed with gathering the requested information and will not produce any documents until we reach an agreement on reimbursement. Clearly Cingular is entitled to reimbursement of the costs for the various handsets and devices that are responsive to RFP no. 2. In addition, Cingular is legally entitled to reimbursement of its costs for employee time spent in responding to the subpoena particularly given the breadth of some of the requests even as currently limited. Similarly, if there are significant expenses incurred as a result of copying costs, these will require reimbursement as well. Finally, it is Cingular's position that Broadcom should reimburse it for its reasonable attorneys fees and costs relating to witness preparation and defense of the depositions. This is particularly true when Broadcom is insisting on proceeding forward with a deposition on the network side of issues when quite likely a declaration would suffice. It is of course Broadcom's right to proceed with the deposition and Cingular will produce a deponent for these particular categories of information. However, Cingular should not be required to shoulder the cost. Please provide me with Broadcom's proposal regarding reimbursement as soon as possible

Broadcom will reimburse Cingular for reasonable and itemized out of pocket costs for the production of documents and things sought by the subpoena. If Cingular believes that these items will exceed

10/11/2006

EXHIBIT 3
PAGE 9 OF 40

$10,000, please contact us so that we can determine whether the extraordinary expense is truly justified and necessary. Broadcom does not agree to pay attorney fees for preparing and defending the witness.



In addition, you were going to check to see if some of the categories of documents responsive to the subpoena had been produced by Qualcomm or if Broadcom would require Cingular's production of responsive documentation. Specifically this inquiry related to RFP categories numbers 4 and 5. Please advise as to the status and whether these documents will be required.

Broadcom requires that documents responsive to RFPs 4 and 5 be produced.



In regard to RFP number 8, I have again reconfirmed that Cingular does not have access to any Qualcomm website or interactive intranet/internet pages. If Cingular is involved with troubleshooting with Qualcomm this is performed via email or in person or on the phone as I previously advised. Much of the troubleshooting is conducted through vendors, as one would assume. In any event, there are no responsive documents for this category.

As for RFP number 10 - and this relates to my prior email inquiry, please provide the name of the Qualcomm software Broadcom is interested in learning about. Cingular needs that in order to respond effectively. Cingular is aware of various debugging, logging and development tools that Qualcomm has available for device developers, operators, and application developers. Cingular never touches or changes firmware or code from a vendor or chipset/platform vendor - it obtains new software builds form the vendors that incorporate the changes Cingular requires.

Broadcom is interested in all AMSS, DMSS, Base station, debugging, logging, and development software and software tools that Cingular has available from Qualcomm or device and application developers. Broadcom reserves the right to seek production of the actual code/software, however at this point documents sufficient to show and summarize the function of the software Cingular receives from Qualcomm, directly or indirectly, should be sufficient, along with documents and testimony confirming that Cingular does not modify the software as you relate supra.

In regard to deposition and document categories number 1, the information requested is considered highly confidential by Cingular. Having it made public could impact Cingular adversely in its business relationships with various vendors. As such, this information will only be produced under the highest category of protection under the Protective Order - attorneys eyes only. Cingular requires that Broadcom accept this designation prior to production and agree that the documents will be subject to the highest level of protection possible under the Protective Order. Please confirm Broadcom's agreement.



Broadcom agrees to the designation of attorney's eyes only for deposition and document category number 1.

Finally, regarding my prior inquiry relating to the scope of timing for the responsive documents and depositions, I had proposed a five year limit or October 2001. Qualcomm has agreed to this limitation as to scope for its subpoena. Cingular will proceed with this as an acceptable scope of production for both the deposition information and documents unless Broadcom advises otherwise. Of course, simply by agreeing to this limit does not mean that Cingular will have responsive documents or device hardware still in its possession, custody or control given usual business retention practices.



Broadcom agrees to the 5 year time frame.

Nothing in this correspondence is intended as a waiver of Cingular's objections to the subpoena or its rights to object further, and all documents or information including testimony produced are and continue to be covered by said objections.

I imagine that you are quite busy this week with your upcoming wedding this weekend. Congratulations, again,

10/11/2006

EXHIBIT 3
PAGE 10 OF 40

and I hope you have a wonderful time both this weekend and on your honeymoon.   Please provide me with a contact person at your firm that will be responsible for continuing this dialogue and moving forward with scheduling depositions in your absence.

Thank you for the kind wishes   Greg Schodde (gschodde@mhmlaw.com ((312) 775-8117) will be the contact person while I am gone.

**EXHIBIT 3**
**PAGE 11 OF 40**

10/11/2006

**From:** MPOWERS@wbcounsel.com [mailto:MPOWERS@wbcounsel.com]
**Sent:** Tuesday, October 10, 2006 6:48 PM
**To:** Brian Bianco
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com; Greg Schodde
**Subject:** RE: Broadcom Cingular Supboena - Further Meet and Confer

Brian -

When you state that Broadcom will reimburse Cingular for its "reasonable and itemized out of pocket costs for the production of documents and things " does this include the cost of employee time spent gathering the documents or is Broadcom only agreeing to reimburse for items such as handset and device production as well as copy costs?

Michele A. Powers
**WESTON BENSHOOF ROCHEFORT**
   **RUBALCAVA MacCUISH LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Direct Line: (213) 576-1030
Cell: (310) 696-9225
E-Mail: mpowers@wbcounsel.com

EXHIBIT 3
PAGE 12 OF 40

**From:** Brian Blanco
**Sent:** Wednesday, October 11, 2006 5:00 PM
**To:** 'MPOWERS@wbcounsel.com'
**Cc:** shameed@wbcounsel.com; HTHAI@wbcounsel.com; Greg Schodde
**Subject:** RE: Broadcom Cingular Supboena - Further Meet and Confer

Dear Michele,

Subject to the dollar limit  we mentioned previously, Broadcom is willing to reimburse Cingular for  the  reasonable, itemized time of hourly clerical workers employed by Cingular in making Cingular's production, for example the cost of messengers or the time spent making copies and arranging shipping.  We are not agreeing to pay any extraordinary expenses such as professional fees or time spent on this matter by salaried employees, as we do not believe these items are normally reimbursable.

EXHIBIT 3
PAGE 13 OF 40



WESTON BENSHOOF
ROCHEFORT RUBALCAVA MacCUISH LLP
ATTORNEYS AT LAW

(213) 576-1000
mpowers@wbcounsel.com

October 17, 2006

VIA FACSIMILE AND U.S. MAIL

Gregory C. Schodde, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re: *Qualcomm v. Broadcom* - U. S. District Court, Southern District of
California Case No. 05 CV 1392
Cingular Wireless Subpoena

Dear Mr. Shodde:

This will confirm and memorialize our meet and confer conversation last Friday afternoon regarding the above-referenced subpoena. Specifically, we discussed the issue of whether your client, Broadcom Corporation ("Broadcom") would agree to reimbursement of Cingular Wireless' ("Cingular") reasonable costs incurred in responding to Broadcom's subpoena given Broadcom's earlier statement from Brian Bianco's email dated October 11, 2006 stating that subject to a $10,000 cap:

> "Broadcom is willing to reimburse Cingular for the reasonable, itemized time of hourly clerical workers employed by Cingular in making Cingular's production, for example the cost of messengers or the time spent making copies and arranging shipping. We are not agreeing to pay any extraordinary expenses such as professional fees or time spent on this matter by salaried employees, as we do not believe these items are normally reimbursable."

Preliminarily, you clarified and confirmed that the limitation on reimbursement categories set forth in Mr. Bianco's email does not apply to the cost of the handsets and devices responsive to Request for Production number 2. Broadcom will reimburse Cingular for the cost of these items.

Regarding reimbursement of Cingular's reasonable costs for employee time and attorney's fees incurred in responding to the subpoena Broadcom does not believe

333 SOUTH HOPE STREET • SIXTEENTH FLOOR • LOS ANGELES, CA  90071 • TEL 213 576 1000 • FAX 213 576 1100

2801 TOWNSGATE ROAD, SUITE 215 • WESTLAKE VILLAGE, CA 91361 • TEL 805 497 9474 • FAX 805 497 8804

863944.3                                                     www.wbcounsel.com

EXHIBIT 3
PAGE 14 OF 40

10/17/06  13:04 FAX 2135781100          WESTON BENSHOOF                    ☑003

Gregory C. Schodde, Esq.
October 17, 2006
Page 2

these are reimbursable and requires an estimate of the employee time involved in responding to the subpoena. You agreed that Cingular should hold off on gathering the responsive documents until we can provide and estimate for the amount of time and expense required for the document production.

As you are aware, it is Cingular's position that as a third party it is entitled under Rule 45 to reimbursement of both employee time and attorneys fees reasonably incurred in responding to Broadcom's subpoena. Rule 45 provides that a responding third party shall be protected from significant expense resulting from the inspection and copying required to produce information under a subpoena *duces tecum*. Rule 45 (c)(2)(B). A nonparty's legal fees and labor costs particularly where the work benefits the requesting party, have been considered a cost of compliance reimbursable under Rule 45(c)(2)(B). *First America Corporation v. Price Waterhouse LLP*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) citing *Kahn v. General Motors Corp.*, 1992 WL 208286 (S.D.N.Y. Aug. 14, 1992)(awarding nonparty reimbursement of legal fees incurred "in connection with the retrieval, identification, and review of documents called for by the subpoena."); *Pacific Gas & Electric Co. v. Lynch*, 2002 WL 32812098 at *4 (N.D. Cal. 2002)(awarding third party reasonable costs in complying with a subpoena "including labor costs and legal work done to facilitate compliance.").

> "A narrow reading of Rule 45 (c)(2)(B),... that distinguishes between the costs of production as opposed to costs of 'inspection and copying' such that only the latter are protected runs afoul of the spirit and purpose of the Rule. As stated in the Advisory Committee's note to the 1991 amendment, 'a non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.'"

*First America Corp., supra*, at 241 (internal citations omitted).


WESTON BENSHOOF
ROCHEFORT RUBALCAVA MACCUISH LLP
ATTORNEYS AT LAW

E67994.1

EXHIBIT 3
PAGE 15 OF 40

10/17/06  13:04 FAX 2135761100 _____ WESTON BENSHOOF                    ☑004

Gregory C. Schodde, Esq.
October 17, 2006
Page 3

Cingular is in the process of determining an estimate of the amount of time and expense involved in the production required by Broadcom's subpoena.  In the interim, pursuant to our agreement, Cingular will not begin to retrieve or copy responsive documents.

Sincerely,

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP

EXHIBIT 3
PAGE 16 OF 40

Law Offices

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000
FACSIMILE: (312) 775-8100
WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
PETER J. McANDREWS
LELAND G. HANSEN
JAMES M. HAFERTEPE
JONATHAN N. SICK
ELIGIO C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL H. HARLIN
JAMES B. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DiCERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH M. BUTSCHER
SARA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
HIRUT P. DALAL
CHRISTOPHER M. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS M. JASKOVIAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OSMAN I BOROKSU
PHILIP H. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN

PETER J. PROMMER
MERLE S. ELLIOTT
BRIAN C. BIANCO
HEATHER A. BJELLA
PAUL W. McANDREWS
ANDREW B. KARP
LEONARD D. CONAPINSKI
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
CHRISTOPHER J. BUCHKO
MICHAEL J. KRAUTNER
ADAM J. FAIER
JAMES H WILLIAMS
SARAH A. KOFFLIN
PATRICK V. BRADLEY
CHRISTINA F. CZAKALY
STEPHANIE F. PAUL
DANIEL T O'BRIEN
OF COUNSEL
S. JACK SAUER
*ADMITTED TO PRACTICE IN CA

October 18, 2006

VIA FACSIMILE AND U.S. MAIL
Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA MacCUISH LLP
333 South Hope Street
Los Angeles, California 90071

    Re:    *Qualcomm Incorporated v. Broadcom Corporation*
            Case No. 05-cv-1392 B (BLM)
            Cingular Wireless Subpoena

Dear Ms. Powers:

    I respond to your letter of October 17, which purports to confirm and memorialize the meet and confer that took place on Friday, October 13.

    There are inaccuracies in your letter. Most importantly, Broadcom did not agree that Cingular should "hold off on gathering the responsive documents until [Qualcomm] can provide an[] estimate for the amount of time and expense required for the document production." Broadcom also did not agree that Cingular should "not begin to retrieve or copy responsive documents."

    We expect that Cingular is currently gathering, retrieving, and copying responsive documents. We expect that Cingular is capable of providing, and will provide, the estimate

EXHIBIT 3
PAGE 17 OF 40

# McANDREWS, HELD & MALLOY, LTD.

Michele A. Powers, Esq.
October 18, 2006
Page 2 of 3

simultaneous to that activity. You have accurately stated that Broadcom does not believe that costs for employee time and attorney's fees incurred in responding to a subpoena are reimbursable under Rule 45. Nevertheless, as a courtesy, Broadcom has agreed to pay "for the reasonable, itemized time of hourly clerical workers employed by Cingular in making Cingular's production," as set forth in Mr. Bianco's e-mail of October 11.

We understand that Cingular believes it is entitled to its attorney's fees in responding to the subpoena. We are in the process of reviewing the authority cited in your letter. We note, however, that Cingular's position is inconsistent with the language of Rule 45 itself. That Rule provides for recovery of a "reasonable attorney's fee" only as a sanction. See Fed. R. Civ. P. 45(c)(1). As we have done in the past, we will continue to take reasonable steps to avoid imposing an undue burden on Cingular.

In any event, Cingular has not specifically identified an undue burden associated with gathering and copying documents responsive to many or all of the subpoena categories. As you know, many of the categories were carefully drafted to seek only documents "sufficient to identify" or "sufficient to show" particular information. In response to at least some of these requests, Cingular could produce, for example, summary-level documents to meet certain categories of information requested. For example, as part of Cingular's response to Document Request No. 1, Cingular could presumably locate summary-level documents that identify each Cingular Device that incorporates a Qualcomm Accused Product.

EXHIBIT 3
PAGE 18 OF 40

McANDREWS, HELD & MALLOY, LTD.

Michele A. Powers, Esq.
October 18, 2006
Page 3 of 3

Please call Scott McBride or me if you have any further questions regarding this

correspondence or the subpoena.

Very truly yours,

*Gregory C. Schodde*
Gregory C. Schodde

EXHIBIT 3
PAGE 19 OF 40



**Weston Benshoof**
**Rochefort Rubalcava MacCuish** LLP
ATTORNEYS AT LAW

(213) 576-1030
rpowers@wbcounsel.com

November 2, 2006

VIA FACSIMILE AND U.S. MAIL

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

      Re: *Qualcomm v. Broadcom* - U. S. District Court, Southern District of
          California Case No. 05 CV 1392
          <u>Cingular Wireless Subpoena</u>

Dear Mr. McBride:

          Cingular has gathered the Cingular devices responsive to the Request for
Documents and Things Number 2 contained in Broadcom Corporation's ("Broadcom")
subpoena that are within Cingular's possession, custody and control. The responsive
devices, as previously discussed on several occasions with various individuals at your
office, do not include any devices that are currently being tested or considered for
commercial deployment by Cingular. Cingular objects to any requirement to produce
prospective devices that Cingular is currently considering for commercial use on the
grounds that such information and devices are confidential, proprietary and commercially
sensitive. Moreover, any devices that Cingular may currently have in its possession
custody or control which it is considering for commercial deployment are in very short
supply and Cingular requires every such device for its own business development
purposes.

333 South Hope Street • Sixteenth Floor • Los Angeles. CA 90071 • tel 213 576 1000 • fax 213 576 1100

2801 Townsgate Road. Suite 215 • Westlake Village. CA 91361 • tel 805 497 9474 • fax 805 497 8804
570480 1                                www.wbcounsel.com

EXHIBIT 3
PAGE 20 OF 40

Scott McBride, Esq.
November 2, 2006
Page 2

Prior to production of the devices, Cingular requires receipt of full payment in reimbursement for the cost of said devices in the amount of $3,559.88. Please forward a check made out to Cingular Wireless in full payment of this amount to my attention at your earliest convenience.

Sincerely,

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP

870492.1

Law Offices

## McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR
500 WEST MADISON STREET
CHICAGO, ILLINOIS 60661

Telephone: (312) 775-8000
Facsimile: (312) 775-8100
www.mhmlaw.com

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE M. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT M. FIESZLER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK A. ARNOLD JR.
GEORGE F. WHEELER
CHRISTOPHER C. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
RONALD J. POCHOPIEN
SHARON A. IMANS
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
PETER J. McANDREWS
LELAND G. HANSEN
JAMES M. HANSEN
MICHAEL A. HAFERTEPE
JONATHAN R. SICK
ELDAD C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL R. HAVEN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARSUN
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD M. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER E. LACROIX

JOSEPH F. HARDING
JOSEPH M. GUTSCHER
SARA J. BAYTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID E. PETTY
MICHAEL T. CRUZ*
NIRUT P. DALAL
CHRISTOPHER N. GEORGE
MATTHEW A. ANDERSON
YUFENG MA
DENNIS H. JAGKOMAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS M. HACKETT
HOPETON S. WALKER
SHAWN L. PETERSON
OGNYAN L. BEREMSKI
PHILIP M. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN

PETER J. PROMMER
MERLE S. ELLIOTT
BRIAN G. BIANCO
HEATHER A. BJELLA
PAUL W. McANDREWS
ANDREW B. EARP
LEONARD D. EDMAPINSKI
LAURA M. PERSONICK
JONATHAN M. RUSHMAN
CHRISTOPHER J. BUCHKO
MICHAEL J. KRAUTHCR
ADAM J. FAIER
JAMES H. WILLIAMS
SARAH K. KOTTJIH
PATRICK V. BRADLEY
CHRISTINA F. SZAKALY
STEPHANIE F. PALL
DANIEL T. O'BRIEN

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

November 3, 2006

**VIA FEDERAL EXPRESS**

Michele A. Powers
WESTON BENSHOOF ROCHEFORT
RUBALCAVA MACCUISH LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071

> Re:   Qualcomm v. Broadcom – U.S. District Court,
>       Southern District of California Case No. 05 CV 1392
>       Cingular Wireless Subpoena

Dear Ms. Powers:

Enclosed is a check in the amount of $3,559.88 for the cost of the Cingular devices responsive to the Request for Documents and Things Number 2 contained in Broadcom Corporation's ("Broadcom") subpoena. Please contact me if you have any questions.

Best regards,

Scott P. McBride

SPM/lmf
Enclosure

EXHIBIT 3
PAGE 22 OF 40

**MC ANDREWS, HELD & MALLOY, LTD.**

19895

| | | | | | CHECK NO: | 19895 |
|---|---|---|---|---|---|---|
| VENDOR: | Cingular Wireless LLC | | | | | |
| OUR REF. NO. | YOUR INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | | DISCOUNT TAKEN |
| | 1772-50961us01 devi | 11/3/2006 | 3559.88 | 3559.88 | | 0.00 |

**EXHIBIT 3**
**PAGE 23 OF 40**



WESTON  BENSHOOF
ROCHEFORT  RUBALCAVA  MACCUISH llp
ATTORNEYS AT LAW

(213) 576-1030
mpowers@wbcounsel.com

November 7, 2006

**VIA FEDERAL EXPRESS**

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re: *Qualcomm v. Broadcom* - U. S. District Court, Southern District of
California Case No. 05 CV 1392
Cingular Wireless Subpoena

Dear Mr McBride:

Enclosed please find the Cingular devices responsive to the Request for
Documents and Things Number 2 contained in Broadcom Corporation's ("Broadcom")
subpoena that are within Cingular's possession, custody and control (Bates Nos.
CW.BROAD 0029- CW.BROAD 0040). Specifically, enclosed are two of each of the
following devices:

Sierra AC860
LG CU320
LG CU500
Samsung zx10
Samsung zx20
Option GT Max PC Card

Sincerely,

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP

333 SOUTH HOPE STREET • SIXTEENTH FLOOR • LOS ANGELES, CA 90071 • TEL 213 576 1000 • FAX 213 576 1100

2801 TOWNSGATE ROAD, SUITE 215 • WESTLAKE VILLAGE, CA 91361 • TEL 805 497 9474 • FAX 805 497 8804
872788 1                                    www.wbcounsel.com

EXHIBIT 3
PAGE 24 OF 40

11/21/06  03:23 FAX 2135761100          WESTON BENSHOOF          ☒002



**WESTON BENSHOOF**
ROCHEFORT  RUBALCAVA  MacCUISH LLP
ATTORNEYS AT LAW

(213) 576-1000
mpowers@wbcounsel.com

November 21, 2006

VIA FACSIMILE AND U.S. MAIL

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re:  *Qualcomm Incorporated v. Broadcom Corporation*, U.S.D.C., Southern
District of California, Case o. CV05-1662;
Broadcom subpoena compliance and reimbursement

Dear Mr. McBride:

This will provide a description of the steps take by Cingular Wireless LLC
("Cingular") to date in response to the third party subpoena served by Broadcom
Corporation (the "Subpoena") and constitutes further clarification and quantification of
the reimbursement of expenses required prior to further production of responsive
documents and items by Cingular.

I.    Subpoena Compliance:    Meet and Confer, Investigation, Search and
Retrieval of Information, Document Review

Broadcom served Cingular with the Subpoena on August 30, 2006. Shortly
after service, Cingular served its Rule 45 objections and the parties commenced a lengthy
meet and confer process to determine the appropriate scope of the Subpoena and
corresponding production.

During this process Cingular identified approximately twenty-one potential
custodians of responsive information. The potential custodians worked in numerous
divisions at Cingular at various locations around the country. Cingular proceeded to
conduct extensive and sometimes multiple interviews of these individuals in an effort to
understand Cingular's relevant processes and procedures to further facilitate the meet and
confer process and to locate potential custodians of records as well as potential
deponents. After obtaining contact information and a thorough understanding of the
documents and information required by the Subpoena, potentially responsive documents
were requested from specific custodians. In addition, based upon Broadcom's responsive

EXHIBIT 3
PAGE 25 OF 40

Scott McBride, Esq.
November 21, 2006
Page 2

document criteria and as directed by counsel Cingular IT performed e-discovery and key
word searches on the hard drives of specific potential custodians of responsive
information.

The process of identifying responsive documents was complicated by the
fact that some of the terminology used in the Subpoena did not accord with the
terminology or precise testing requirements used within Cingular. For example,
Cingular's employees are not generally familiar with and do not specifically refer to the
cell search procedure of Annex C of 3 GPP TS 25.21. This ambiguity prompted
additional conferences with counsel for Broadcom and follow-up conversations and
interviews with document and information custodians to clarify the relevant technology,
features and functions sought by Broadcom. Moreover, although Broadcom ultimately
provided precise and particularized search criteria, given Cingular's testing protocols the
document searches of necessity incorporated a broader scope of responsive documents
than would have been the case if these precise focus features themselves were of
particular importance to Cingular. For example, Cingular does not focus on the 3 step
cell search procedure but does conduct tests that contain this functionality within the
scope of inquiry. As such, a key word search for "3 step cell search" will not produce
the universe of responsive documents. These difficulties were conveyed to Broadcom
counsel during the meet and confer process so as to provide an understanding of the
breadth of the requests and the volume of potentially responsive data Cingular would be
required to review for the production.

Efforts were further complicated because of the fact that Broadcom was
unable to provide specific information relating to the relevant devices or base station
equipment at issue. Again, this issue resulted in additional conferences with counsel for
Broadcom and with Cingular's document custodians to clarify the issues and narrow
search parameters. The meet and confer process was additionally complicated by the
lack of staffing continuity with Broadcom's counsel as discussions were conducted with
four different counsel resulting in the need to readdress particular issues and further
clarify prior agreements.

Upon clarification and resolution of these issues, information was gathered
in a variety of ways. First, custodians of record were requested to have their specific
teams search their electronic and paper records for responsive documents. Second,
certain custodians of record were requested to provide summary information as well as
relevant devices responsive to the requests. Third, Cingular's information management

WESTON BENSHOOF
ROCHEFORT RUBALCAVA MACCUISH LLP

EXHIBIT 3
PAGE 26 OF 40

877167.1

Scott McBride, Esq.
November 21, 2006
Page 3

department imaged the hard drive of certain key individuals and performed key word searches, based on advice from counsel, to assist in the identification of responsive records.

Once all of this information was collected, counsel reviewed it for responsiveness and privilege, which review is continuing and on-going. Counsel has had follow-up discussions with certain custodians when it was necessary to clarify responsiveness. Counsel also reconfirmed with custodians that diligent searches had been conducted and that all potentially responsive information as defined by the parties had been provided.

In addition to the extensive meet and confer process concerning the precise scope of the Subpoena, counsel also confirmed and discussed production of responsive documents pursuant to the operative Protective Order provisions, reimbursement of expenses and costs incurred by Cingular as well as the scope of deposition testimony, the requirement of notification to impacted third party vendors and the timing of production and depositions. Several letters and emails were exchanged throughout this process resulting in some mutual agreement and some requests for additional information, which this correspondence is intended to provide, in part.

Finally, as you are aware, Cingular has not searched any backup tapes and will also not be providing any email correspondence responsive to the Subpoena. Given the time frame of October 2001 to the present, documents responsive to the earlier period of Broadcom's inquiry may have either been destroyed as part of Cingular's normal document retention procedures (prior to the issuance of the Subpoena) or may be stored on archived back-up tapes. It is our understanding that Broadcom is not requesting that Cingular conduct a search of its backup tapes, as such an undertaking would involve an extraordinary investment of time and resources. Specifically, the identification of appropriate back up tapes along with the retrieval of any relevant information would be lengthy and time consuming. We do not believe that it is necessary for Cingular to undertake this process of recovery and review as that would be unduly burdensome for a third party. Similarly, pursuant to the parties' prior agreement it is Cingular's understanding that Broadcom is not interested in the detail and minutia provided by individuals' emails that may contain responsive information concerning for example, troubleshooting of various device features or functions. As such, email correspondence containing potentially responsive information will not be produced by Cingular. If you

WESTON BENSHOOF
ROCHEFORT RUBALCAVA MACCUISH LLP
ATTORNEYS AT LAW

EXHIBIT 3
PAGE 27 OF 40

F79187.1

11/21/06  03:25 FAX 2135761100          WESTON BENSHOOF                    ☑005

Scott McBride, Esq.
November 21, 2006
Page 4

disagree, please let us know as soon as possible so that we may discuss the propriety of
your position.

Current document review for responsive and privileged documents is
underway.    In response to Cingular's collection efforts described above, our office
received approximately 9 gigabytes of potentially responsive electronic data for review
from Cingular (one gigabyte representing an average of 75,000 pages).  At this time we
have less than 5 gigabytes remaining for review.

## II.    Depositions

In addition to investigation, retrieval, review and production of relevant
documents, Cingular will also produce two persons most knowledgeable for deposition
covering the topics in the Subpoena as modified and agreed to between the parties.
Michael Hlavaty-LaPosa, Cingular's Director, SPE-Advanced Devices will be produced
and available for deposition Friday, December 8th.  Mr. Hlavaty-LaPosa is located in
Redmond, Washington.    Cingular will also be producing a deponent to address the
network related categories of information.  Cingular is determining the appropriate
deponent and will have the identity and available date for deposition early next week.
The deposition will go forward in Atlanta, Georgia.

## III.    Expense Reimbursement

Based on the foregoing, we believe Cingular has complied and continues to
comply with its obligations under the Subpoena.  Moreover, based upon the considerable
and time-intensive efforts taken to comply, Cingular, as a third-party, requests that
Broadcom agree to reimburse Cingular for its reasonable costs, including attorneys' fees,
which as of work performed through November 15th currently total $41,723.50.  Due to
the ongoing review required by Broadcom this total is of course increasing daily.

Notably Cingular's request for cost reimbursement is limited to its
document production.  These fees do not include charges related to time spent on initial
subpoena review and objections, reimbursement, notice to third party vendors, deposition
preparation or production (mostly forthcoming) or investigation related to Qualcomm
Incorporated's subpoena.  The charges include 61.5 attorney hours ($19,065.00) incurred
conducting internal investigations, meet and confer conferences with Broadcom counsel,
correspondence and documentation of same, and communications and updates with

WESTON BENSHOOF
ROCHEFORT RUBALCAVA MACCUISH LLP
ATTORNEYS AT LAW

**EXHIBIT 3**
**PAGE 28 OF 40**

179167 1

Scott McBride, Esq.
November 21, 2006
Page 5

Cingular's in-house counsel.   They also include 71.2 attorney hours ($17,947.00) and
34.9 paralegal hours ($4,711.50) incurred thus far in document review.

      Prior to production of the electronic documents, Cingular will be
submitting the data to a third party vendor for conversion to TIFF images and for bates
and confidentiality branding (Outside Attorneys' Eyes Only designation as agreed).
Cingular has negotiated a price for this process of $1,750.00 per gigabyte.   Cingular
expects Broadcom to reimburse it for the full cost of the outside vendor's services related
to the document conversion and labeling.   Specific parameters of the conversion and
labeling process need to be discussed with Broadcom to ensure the documents will be
produced in the form best suited for Broadcom's purposes.   For example, Excel
spreadsheets may be converted so that they are viewed as one would view them on screen
or as they would print to paper.   Our vendor will need to know Broadcom's preference,
if any.

      Should you require additional information, please let us know.

          Sincerely,

          Michele A. Powers
        WESTON, BENSHOOF,
    ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP

579157.1

11/29/06  02:55 FAX 2135761100          WESTON BENSHOOF                    ☑002/003



## WESTON BENSHOOF
### ROCHEFORT RUBALCAVA MACCUISH LLP
ATTORNEYS AT LAW

(213) 576-1030
mpowers@wbcounsel.com

November 29, 2006

**VIA FACSIMILE AND U.S. MAIL**

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re: *Qualcomm Incorporated v. Broadcom Corporation*, U.S.D.C., Southern
District of California, Case o. CV05-1662;
Broadcom subpoena compliance — deposition schedule

Dear Mr. McBride:

This will respond to your inquiry this morning regarding the possibility of
scheduling Cingular Wireless LLC's ("Cingular") deponents in response to Broadcom
Corporation's ("Broadcom") third party subpoena ("Subpoena") the week of December
11th as opposed to next week.  Preliminarily, as detailed in prior correspondence,
Cingular will not produce any documents (which we understand are required for these
depositions) until Broadcom agrees to reimburse its reasonable costs and fees incurred in
responding to the document production.  With that caveat, Cingular is willing and will
continue to work with Broadcom to attempt to accommodate its needs and schedule to the
extent practicable.

As previously provided in my correspondence to you of November 21st,
Mr. Hlavaty-Laposa, Cingular's Director, SPE-Advanced Devices, will be produced for
purposes of responding to the Subpoena categories pertaining to devices as modified and
agreed to between the parties.  Mr. Hlavaty-Laposa is available for deposition Friday,
December 8th and can be made available Wednesday, December 13th if required.  This
deposition will take place in or near Redmond, Washington.  These are the only dates Mr.
Hlavaty-Laposa is available for deposition this year.

Should the deposition get pushed off further, Mr. Hlavaty-Laposa may be
available the weeks of January 2nd and 8th although Cingular has not requested that he
reserve any days at this time.  Mr. Hlavaty-Laposa is not available the remainder of
January.  If the depositions go forward during January, they will of necessity go forward
at our offices here in Los Angeles.  As I previously informed your office and in particular

333 SOUTH HOPE STREET • SIXTEENTH FLOOR • LOS ANGELES, CA  90071 • TEL 213  576  1000 • FAX 213  576  1100

2801 TOWNSGATE ROAD, SUITE 215 • WESTLAKE VILLAGE, CA 91361 • TEL 805  497  9474 • FAX 8
881804.1                                    www.wbcounsel.com

**EXHIBIT 3
PAGE 30 OF 40**

Scott McBride, Esq.
November 29, 2006
Page 2

Mr. Bianco, I will be on maternity leave beginning sometime around January 22nd and, as a result of my pregnancy cannot travel in January. As a result, if the depositions are not completed prior to my maternity leave the next available dates that Cingular will produce deponents will be in May 2007. Cingular will not be prejudiced due to Broadcom's failure to diligently pursue completion of the depositions.

Regarding the deposition of Cingular's network person most knowledgeable, Cingular's investigation to identify the appropriate deponent is continuing and we hope to have a name and available dates for you this Friday. In all likelihood the deposition will be in Atlanta as previously stated.

Sincerely,

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP
cc:   Kevin Leung, Esq., Counsel for Qualcomm Incorporated
      Brian Bianco, Esq.

WESTON BENSHOOF
ROCHEFORT RUBALCAVA MacCUISH LLP
ATTORNEYS AT LAW
EXHIBIT 3
PAGE 31 OF 40

**WB** WESTON BENSHOOF
ROCHEFORT RUBALCAVA MACCUISH LLP
ATTORNEYS AT LAW

(213) 576-1030
mpowers@wbcounsel.com

November 29, 2006

VIA FACSIMILE AND U.S. MAIL

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re: *Qualcomm Incorporated v. Broadcom Corporation*, U.S.D.C., Southern
District of California, Case o. CV05-1662;
Broadcom subpoena compliance and reimbursement

Dear Mr. McBride:

Broadcom Corporation ("Broadcom") has not yet responded to Cingular
Wireless LLC's ("Cingular") request for reimbursement of its costs and fees incurred in
responding to the third party subpoena served by Broadcom Corporation (the
"Subpoena") as set forth in my correspondence to you of November 21, 2006. Be
advised that unless and until Cingular receives written confirmation and assurance of
Broadcom's agreement to reimburse it for its costs and fees, Cingular is not moving
forward with having the documents processed by the outside vendor and will not be
producing any further documents to Broadcom. Cingular has complied and cooperated
in every aspect of the Subpoena, however, as it has repeatedly reiterated in conversations
with counsel, written correspondence and formal objections it requires that its reasonable
expenses incurred in this massive effort be reimbursed by Broadcom. Broadcom has not
even agreed to reimburse Cingular for the outside vendor expenses incurred in the
production much less its attorneys fees.

As of November 28th the currently total for Cingular's fees and costs that it
requests be reimbursed totals $67,993.50. Due to the ongoing review required by
Broadcom, including the increased scope of production requested on Monday by you and
Mr. Bianco this total will continue to increasing daily. There remains over 1 gigabyte of
documents left to review along with additional documents responsive to Broadcom's
recent increase in the scope of production that our firm has not yet received.

As set forth in my prior correspondence the amounts requested for
reimbursement include only those costs and fees incurred in the document production.

333 SOUTH HOPE STREET • SIXTEENTH FLOOR • LOS ANGELES, CA 90071 • TEL 213 576 1000 • FAX 213 576 1100
2801 TOWNSGATE ROAD, SUITE 215 • WESTLAKE VILLAGE, CA 91361 • TEL 805 497 9474
www.wbcounsel.com

EXHIBIT 3
PAGE 32 OF 40

11/29/06  01:38 FAX 2135781100          WESTON BENSHOOF                    ☒003

Scott McBride, Esq.
November 29, 2006
Page 2

These fees do not include charges related to time spent on initial subpoena review and objections, reimbursement, notice to third party vendors, deposition preparation or production or investigation and production related to Qualcomm Incorporated's subpoena.    The current total includes 62.7 attorney hours ($19,437.00) incurred conducting internal investigations, meet and confer conferences with Broadcom counsel, correspondence and documentation of same, and communications and updates with Cingular's in-house counsel.    It also includes 175.20 attorney hours ($41,739.00) and 50.5 paralegal hours ($6,817.50) incurred thus far in document review.

Prior to production of the electronic documents, Cingular will be submitting the data to a third party vendor for conversion to TIFF images and for bates and confidentiality branding (Outside Attorneys' Eyes Only designation as agreed). The production will be produced with load files for Summation per your voicemail request this morning. As I previously informed you, Cingular has negotiated a price for this process of $1,750.00 per gigabyte. Cingular expects Broadcom to reimburse it for the full cost of the outside vendor's services related to the document conversion and labeling.

I will respond to you under separate cover regarding potential deposition dates.

Sincerely,

Michele A. Powers
WESTON, BENSHOOF
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP



EXHIBIT 3
PAGE 33 OF 40

12/01/06  01:22 FAX 2135761100          WESTON BENSHOOF                          ☐002/002



WESTON BENSHOOF
ROCHEFORT RUBALCAVA MacCUISH LLP
ATTORNEYS AT LAW

(213) 576-1020
mpowers@wbcounsel.com

December 1, 2006

VIA FACSIMILE AND U.S. MAIL

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re: *Qualcomm Incorporated v. Broadcom Corporation*, U.S.D.C., Southern
District of California, Case o. CV05-1662;
Broadcom subpoena compliance – deposition schedule

Dear Mr. McBride:

Cingular Wireless LLC ("Cingular") will produce David Orloff, Lead Member Technical Staff – Technology for deposition in response to the Broadcom Corporation's ("Broadcom") third party subpoena ("Subpoena") categories pertaining to the network as modified and agreed to between the parties. Cingular proposes that the deposition of Mr. Orloff be taken on December 13th and that the deposition of Mr. Hlavaty-Laposa be moved to December 12th. Cingular also requests that the depositions take place in downtown Los Angeles at our offices rather than Seattle and Atlanta as previously indicated. In the event these depositions are unable to proceed on these dates for whatever reason, both deponents can be made available the week of January 8th in Los Angeles. The sooner dates are confirmed the better for purposes of ensuring availability.

Sincerely,

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP
cc:    Kevin Leung, Esq., Counsel for Qualcomm Incorporated
Brian Bianco, Esq.

EXHIBIT 3
PAGE 34 OF 40

12/01/06  01:18 FAX 2135761100          WESTON BENSHOOF                    ☑002



**WESTON BENSHOOF**
**ROCHEFORT RUBALCAVA MACCUISH** LLP
ATTORNEYS AT LAW

(213) 576-1030
mpowers@wbcounsel.com

December 1, 2006

VIA FACSIMILE AND U.S. MAIL

Scott McBride, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison, Suite 3400
Chicago, IL 60661

Re:  *Qualcomm Incorporated v. Broadcom Corporation*, U.S.D.C., Southern
     District of California, Case o. CV05-1662;
     Broadcom subpoena compliance and reimbursement

Dear Mr. McBride:

    This will respond to Broadcom Corporation's ("Broadcom") counter offer
to reimburse Cingular Wireless LLC ("Cingular") a mere $20,000 of its costs, including
third party vendor charges, and fees incurred in responding to the third party subpoena
served by Broadcom (the "Subpoena") pursuant to our telephone conversation yesterday
afternoon.  Cingular is disappointed with Broadcom's unreasonable position and low ball
offer and will not agree to produce the documents for the stated amount.  Cingular has
complied and cooperated in every aspect of the Subpoena and as a third party with no
connection or possible benefit from this litigation is entitled to its reasonable expenses
incurred which as of November 28th totaled $67,993.50 not including outside vendor
costs.

    Cingular does not agree with any of Broadcom's arguments in support of
the amount of its counteroffer.  Preliminarily, the fact a court has not ordered Broadcom
to pay Cingular's fees and costs incurred in this production because there has not been a
motion to compel due to Cingular's continued cooperative efforts to work with Broadcom
to interpret the scope of the Subpoena and retrieve responsive documents and deponents
is not a logical basis for stating Cingular is not entitled to the requested fees.  The point
of meeting and conferring and working through issues is to avoid a motion to compel that
will waste both the parties' and court's time and resources.

    Second, the argument that Cingular's fees are unreasonable because it
should have had the review completed by in-house counsel is absurd.  This is particularly
true given the workloads of Cingular's in-house counsel, Broadcom's short timeline and

333 SOUTH HOPE STREET • SIXTEENTH FLOOR • LOS ANGELES, CA 90071 • TEL 213 576 1000 • FAX 213 576 1100

2801 TOWNSGATE ROAD, SUITE 215 • WESTLAKE VILLAGE, CA 91361 • TEL 805 497 9474 • FAX 80          **EXHIBIT 3**
883039.1                                    www.wbcounsel.com                              **PAGE 35 OF 40**

12/01/06  01:18 FAX 2135761100        WESTON BENSHOOF                    ☑003

Scott McBride, Esq.
December 1, 2006
Page 2

the volume of documents in excess of 9 gigabytes (75,000 pages average per gigabyte) that required review.

Third, Broadcom's argument that the hourly rates paid by Cingular are excessive is meritless. Cingular will have no trouble establishing for the court the reasonableness of these rates given the complexity of the issues involved and standard rates in Los Angeles and Southern California. Similarly Broadcom's argument that there are no legal issues present in the document review and as a result Cingular is not entitled to have attorneys review the materials is baseless. As repeatedly explained, the vast majority if not all the documents are confidential and proprietary to either Cingular and/or third parties. It was imperative for Cingular to protect these third party interests as well as its own in ensuring a proper review and as limited a production as possible. Even assuming there is any weight to this argument, if all the attorney hours were compensated at a paralegal rate the amount due Cingular would be well over Broadcom's counteroffer proposal further demonstrating the lack of good faith on Broadcom's part in reaching an amicable resolution.

Finally, Broadcom's assertion that the meet and confer conferences with opposing counsel as well as correspondence commemorating the agreements reached were not instrumental in aiding in the production of documents again makes no sense. The conferences were required so that Cingular could understand the Subpoena and the issues relevant to Broadcom's inquiry and reach an agreement as to the Subpoena scope so as to produce the responsive documents in the most cost effective manner possible. Given the complexity of the Subpoena, the issues involved and the potential volume of documents for review and production without the conferences of counsel as well as memorializing correspondence Cingular would not have understood Broadcom's focus and Cingular's response would have been much broader and necessarily more expensive.

Cingular hopes Broadcom will reconsider its position so that the parties may reach an amicable resolution of these issues and proceed forward with the document production and depositions. Cingular has continued and will continue to cooperate in

WB WESTON BENSHOOF
ROCHEFORT RUI
ATTORNEYS AT LAW

EXHIBIT 3
PAGE 36 OF 40

883059.1

Scott McBride, Esq.
December 1, 2006
Page 3

whatever manner it can to fulfill its obligations under the Subpoena. However, expecting Cingular to do so at its sole expense when it is a third party is unreasonable given the breadth of the Subpoena and the volume of documents involved.

Sincerely,

*(signature)*

Michele A. Powers
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA & MacCUISH LLP

MAP/MAP

WESTON BENSHOOF
ROCHEFORT
ATTORNEYS AT LAW
**EXHIBIT 3**
**PAGE 37 OF 40**

883039.1

LAW OFFICES

# McANDREWS, HELD & MALLOY, LTD.

34TH FLOOR

500 WEST MADISON STREET

CHICAGO, ILLINOIS 60661

TELEPHONE: (312) 775-8000

FACSIMILE: (312) 775-8100

WWW.MHMLAW.COM

GEORGE P. McANDREWS
JOHN J. HELD
TIMOTHY J. MALLOY
WILLIAM M. WESLEY
LAWRENCE H. JARVIS
GREGORY J. VOGLER
JEAN DUDEK KUELPER
HERBERT D. HART III
ROBERT W. FIESELER
THOMAS J. WIMBISCUS
STEVEN J. HAMPTON
PRISCILLA F. GALLAGHER
STEPHEN F. SHERRY
PATRICK J. ARNOLD JR.
GEORGE F. WHEELER
CHRISTOPHER E. WINSLADE
EDWARD A. MAS II
GREGORY C. SCHODDE
EDWARD W. REMUS
DONALD J. POCHOPIEN
SHARON A. HWANG
DAVID D. HEADRICK
ALEJANDRO MENCHACA

KIRK A. VANDER LEEST
PETER J. McANDREWS
LELAND G. HANSEN
JAMES M. HAFERTEPE
JONATHAN R. SICK
ELIJID C. PIMENTEL
JAMES P. MURPHY
DEAN A. PELLETIER
MICHAEL B. HARLIN
JAMES R. NUTTALL
ROBERT A. SURRETTE
JOSEPH M. BARICH
SCOTT P. McBRIDE
PATRICIA J. McGRATH
TROY A. GROETKEN
GERALD C. WILLIS
JOHN A. WIBERG
WILHELM L. RAO
SANDRA A. FRANTZEN
RONALD H. SPUHLER
CHRISTOPHER V. CARANI
RONALD A. DICERBO
JENNIFER C. LACROIX

JOSEPH F. HARDING
JOSEPH M. BUTSCHER
SANA J. BARTOS
JOHN L. ABRAMIC
MICHAEL J. FITZPATRICK
DAVID Z. PETTY
MICHAEL T. CRUZ*
MIRUT P. DALAL
CHRISTOPHER M. GEORGE
MATTHEW A. ANDERSON
YUTENG MA
DENNIS M. JASKOMAK
DEBORAH A. LAUGHTON
WILLIAM B. GONT
DENNIS P. HACKETT
HOPETON G. WALKER
SHAWN L. PETERSON
OGNIAN I. DEREMEO
PHILIP M. SHERIDAN
CHRISTOPHER R. CARROLL
CHRISTOPHER M. SCHARFF
CONSUELO G. ERWIN

PETER J. PROMMER
MERLE S. ELLIOTT
BRIAN E. BIANCO
HEATHER A. BJELLA
PAUL W. McANDREWS
ANDREW B. KARP
LEONARD D. CONAPINSKI
LAURA H. PERSONICK
JONATHAN H. RUSHMAN
CHRISTOPHER J. BUCHKO
MICHAEL J. KRAUTNER
ADAM J. FAIER
JAMES H. WILLIAMS
SARAH A. KOFFUN
PATRICK V. BRADLEY
CHRISTINA F. SZAKALY
STEPHANIE F. PALL
DANIEL T. O'BRIEN

OF COUNSEL
S. JACK SAUER

*ADMITTED TO PRACTICE IN CA

December 7, 2006

VIA FACSIMILE AND U.S. MAIL

Michele A. Powers, Esq.
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA MacCUISH LLP
333 South Hope Street
Los Angeles, California 90071

      Re:   *Qualcomm Incorporated v. Broadcom Corporation*
           Case No. 05-cv-1392 B (BLM)
           Cingular Wireless Subpoena

Dear Ms. Powers:

      I respond to your letter of December 6. Thank you for providing dates for Mr. Hlavaty-

Laposa and Mr. Orloff, the two employees that Cingular Wireless LLC ("Cingular") has

designated for the Rule 30(b)(6) deposition of Cingular, which will occur pursuant to the

subpoena served on August 30, 2006 (the "Subpoena"). Unfortunately, Cingular has refused to

produce any responsive documents until an agreement is reached regarding Broadcom's payment

of attorney's fees incurred by Cingular. Despite my request, Cingular still has not cited any

authority that authorizes Cingular's refusal to produce responsive documents that it has already

collected. Cingular has also refused to accept Broadcom's generous offer to reimburse Cingular

EXHIBIT 3
PAGE 38 OF 40

McANDREWS, HELD & MALLOY, LTD.

Michele A. Powers, Esq.
December 7, 2006
Page 2 of 3

for the first $23,500 of Cingular's expenses of any type (including attorney's fees), or to even respond with a counter-offer.

Cingular's conduct has forced Broadcom to prepare a motion to compel compliance with the Subpoena, which it plans to file in the United States District Court for the District of Delaware on December 8, 2006, in order to comply with deadlines in the underlying case schedule that we cannot change. Please confirm today that your firm will accept service of the above-referenced motion on behalf of Cingular Wireless LLC. Please note that our preference continues to be to arrive at a figure that is fair, reasonable, and consistent with the case law in this area, and Broadcom will withdraw its motion if, and as soon as, an agreement is reached.

Because the date of resolution of such motion is uncertain, we again urge Cingular to produce the documents (which it has already collected) so that Broadcom can review the documents and proceed with depositions on the dates proposed in your letter, even though a court may ultimately be obliged to rule on the whether, and to what extent, Cingular will be reimbursed.

Assuming a timely production, Broadcom will proceed with the depositions on the dates proposed in your December 6 letter (January 5 and 12, 2007). Of course, if Cingular continues to withhold its production, Broadcom will not be able to proceed on the proposed dates. Broadcom therefore requests that Cingular to reserve the dates proposed in the event that Broadcom's motion to compel is resolved quickly.

[signature page to follow]

EXHIBIT 3
PAGE 39 OF 40

McANDREWS, HELD & MALLOY, LTD.

Michele A. Powers, Esq.
December 7, 2006
Page 3 of 3

Very truly yours,

Scott P. McBride

c:     Gregory C. Schodde, Esq.
       Brian C. Bianco, Esq.

EXHIBIT 3
PAGE 40 OF 40

## SERVICE

I, Brian E Farnan, certify that I caused to be served upon the following counsel and parties of record a copy of the following document(s):

- **MEMORANDUM OF POINTS AND AUTORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON AUGUST 30, 2006**

via personal service, overnight courier (Via Federal Express), facsimile or first class mail, as indicated below:

Michele Powers, Esq.
WESTON, BENSHOOF,
ROCHEFORT, RUBALCAVA MacCUISH LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

*Attorneys for Subpoenaed Third-
Party Cingular Wireless*

**Via Personal Service (consented to be served on behalf of Cingular Wireless LLC, a Delaware corporation, on or about December 7, 2006)**

*Attorneys for Plaintiff*

Barry Jerome Tucker, Esq.
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, California 92122
Telephone: (858) 450-8478
Facsimile: (858) 450-8499
barry.tucker@hellerehrman.com

**Via Overnight Courier & E-mail**

*Attorneys for Plaintiff*

James R. Batchelder, Esq.
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, California 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220
jbatchelder@daycasebeer.com
cmammen@daycasebeer.com

**Via Overnight Courier & E-mail**

1

Nitin Subhedar, Esq.
HELLER & EHRMAN LLP

2

275 Middlefield Road
Menlo Park, California 94025

3

Telephone: (650) 324-7000
Facsimile: (650) 324-0638

4

**nitin.subhedar@hellerehrman.com**

5

**Via Overnight Courier & E-mail**

*Attorneys for Plaintiff*

6

7

8

_____

BRIAN E. FARNAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28